Argued January 11, reargued April 12, affirmed September 6, 1961

# LANE COUNTY *v.* R. A. HEINTZ CONSTRUCTION CO. ET AL

364 P. 2d 627

*William F. Frye,* District Attorney, Eugene, argued the cause for appellant. With him on the briefs was William T. Linklater, Deputy District Attorney, Eugene.

*Richard Bryson,* Eugene, argued the cause for respondents Winn. On the briefs were Calkins and Bryson, Eugene.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

WARNER, J.
Lane County sues to enjoin the defendants from

removing the topsoil of a tract of land owned by the Winns. The particular tract lies within the boundaries of the area described in Lane County Zoning and Land Use Ordinance No. 70, as adopted by the Board of County Commissioners of the plaintiff county on May 27, 1955. The defendant Heintz Construction Co. was, with the consent of the Winns, removing such material from their premises for use on a construction project in Lane county.

The Winns and the construction company separately demurred to plaintiff's complaint upon the ground that it failed to state sufficient facts to constitute a cause of suit. Both demurrers were sustained and upon want of a further pleading by the plaintiff, the court thereafter entered an order dismissing its complaint. From that order the plaintiff county appeals. Only the defendants Winn filed briefs as respondents in this court.

The county commissioners of Lane county, acting pursuant to the authority conferred by ch 537, Oregon Laws 1947 (now codified as ORS 215.010 to 215.190, inclusive); on May 31, 1949, adopted Ordinance No. 4 as the master or basic plan for zoning certain areas in that county. It is known as the "Zoning Plan of the County of Lane, State of Oregon." The textual portion of this ordinance appears as Exhibit C to plaintiff's complaint.

ORS 215.110 contemplates the possible inclusion in such an ordinance of maps as an integral part thereof. We, therefore, find in Section I, subsection B, of the basic ordinance the following:

"This ordinance shall consist of the text hereof and maps entitled, 'Land [sic] County Zoning Maps,' and identified by the approving signatures of the County Judge, the chairman of the County Planning Commission, and the County Clerk."

There is also attached to the complaint as Exhibit B what is thereon described as "Lane County Zoning Map Sheet No. 2, Township 17S, Range 3W, Willamette Meridian."

County Ordinance No. 70 upon which the plaintiff relies appears in the complaint as Exhibit A and reads:

### "IN THE BOARD OF COUNTY COMMIS-SIONERS OF THE STATE OF OREGON FOR LANE COUNTY

"In the matter of an Ordinance to   )
Amend Zoning and Land Use      )
Regulation Ordinance # 4       )
                        "Zoning and Land Use
                         Ordinance No. 70

"WHEREAS, a majority of the entire membership of the Lane County Planning Commission, after due posting of notices and public hearing on April 25, 1955 concerning the zoning of areas as described below, has voted in favor of said zoning and thereby recommends to the Lane County Board of Commissioners that the same be enacted into an Ordinance,

"NOW THEREFORE, THE BOARD OF COUNTY COMMISSIONERS OF LANE COUNTY, STATE OF OREGON, DOES ORDAIN AS FOLLOWS:

"All of those areas lying in Sections 9, 10, 14, 15, 16, 22, 23, 24, 25, 26 and 27 in Township 17 South, Range 3 West, W.M., and Sections 18, 19, and 30 in Township 17 South, Range 2 West, W.M., bounded on the South by the City Limits of Springfield, on the North by the McKenzie River, on the West by the Brownsville Branch of the Southern Pacific Railroad and on the East by the Wendling Branch of the Southern Pacific Railroad, also that portion of Sections 19, 20, and 29 in Township 17 South Range 2 West lying East of the Wendling

Branch of the Southern Pacific Railroad and West of the McKenzie River, as shown on the following Lane County Zoning Maps:

"Sheets No. 4, 9, in Township 17 South Range 2 West, W.M., and Sheets Nos. 2, 5, 6, 7, 8, Township 17 South Range 3 West, W.M.,

"Approved by the affirmative vote of a majority of the Lane County Planning Commission this 24th day of May, 1955.

[signatures of Chairman and Secretary]

"Regularly passed and adopted by the County Board of Commissioners of Lane County, State of Oregon, this 27 day of May, 1955.

[signatures of Commissioners]"

The metes and bounds description of the land owned by the defendants Winn is set forth in paragraph III of the complaint and lies within the boundaries of Sections 9 and 10 of Township 17 South, Range 3 West, W.M., and hence constitutes but a relatively small part of all the area described in Ordinance No. 70.

At the outset we are confronted with the problem of determining whether Ordinance No. 70 is fatally defective and void, as contended by the defendants, who urge it is indefinite and uncertain in certain vital particulars.

■ Certainty is one of the prime requisites of a statute. It is an essential to its validity. A statute infected with the vice of uncertainty must be pronounced inoperative and void. *Bell v. State Industrial Acc. Comm.*, 157 Or 653, 661, 74 P2d 55.

■ An ordinance must be definite enough to serve as a guide to those who have a duty imposed upon them.

See 82 CJS 117, Statutes § 68; *Vallat v. Radium Dial Co.*, 360 Ill 407, 196 NE 485, 99 ALR 607; *Farmington Dowel Products Co., Inc. v. Forster Mfg. Co.*, 153 Me 265, 136 A2d 542, 544; *State Board of Technical Registration v. McDaniel*, 84 Ariz, 223, 326 P2d 348, 354.

We apply to ordinances of municipalities the same rules that govern the construction of statutes. *State ex rel Erickson v. Sanborn*, 101 Or 686, 693, 201 P 430; *Duncan v. Dryer*, 71 Or 548, 557, 143 P 644; 8 McQuillin, Municipal Corporations (3d ed), 156, § 25.71; 101 CJS 881, Zoning § 128.

■ Turning to the applicable rules of law by which to test the defendants' premise, we first take note that the court is not authorized to rewrite a statute or to ignore the plain meaning of unambiguous words to correct the action of the legislature, or, in this instance, the action of the Board of County Commissioners of Lane county.

"* * * The court's province, after all, is to ascertain what the legislature intended from *the language used*, with such aid as may be found in the rules of interpretation and legitimate extrinsic sources; to construe statutes, not to enact them; to declare what the legislature has done, not what it should have done. * * *" *Fullerton v. Lamm*, 177 Or 655, 670, 163 P2d 941, 165 P2d 63. (Emphasis supplied.)

The rule by which courts must be guided was clearly stated by Mr. Justice RAND in *Barrett v. Union Bridge Co.*, 117 Or 566, 570, 245 P 308, 45 ALR 527:

"Section 715, Or. L. [now ORS 174.010], directs that the courts in the construction of statutes, are 'simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, nor to omit what has been inserted.' We ought never to import into a statute words which are not to be found there, unless

from a careful consideration of the entire statute it be ascertained that to import such words is necessary to give effect to the obvious and plain intention and meaning of the legislature. Under the directions of the statute last referred to, we are not at liberty to give effect to any supposed intention or meaning in the legislature, unless the words to be imported into the statute are, in substance at least, contained in it."

See, also, *Cabell v. Cottage Grove,* 170 Or 256, 272, 130 P2d 1013, 144 ALR 286.

■ We also observe that statutes in derogation of the common law are strictly construed. One of our earliest statements embracing that rule is found in *Morton v. Wessinger,* 58 Or 80, 113 P 7 (1911), and where we said at p 85:

"* * * All statutes which encroach on the personal or property rights of the individual, are to be construed strictly, and in the absence of express words or necessary intendment or implication, it will be presumed that a statute is not intended to interfere with or prejudice a private right or title: 26 Am. & Eng. Enc. Law (2 ed.) 661."

In 1957 this was repeated by the court in *Moore v. Schermerhorn,* 210 Or 23, 39, 307 P2d 483, 308 P2d 180, 65 ALR2d 715. See, also, *Marsh v. McLaughlin,* 210 Or 84, 89, 309 P2d 188.

■ A zoning law or ordinance is legislation in derogation of an owner's common-law right in the use of his property. It, therefore, falls within the ambit of the foregoing rule of strict construction. 1 Rathkopf, The Law of Zoning and Planning (1960), ch 8, p 8-1; 8 McQuillin, Municipal Corporations, supra, 160, § 25.72; 1 Yokley, Zoning Law and Practice (2d ed) 4, § 3; 101 CJS 884, Zoning § 129.

This doctrine of strict construction according to Rathkopf, supra, has two applications: .

> "* * * first, that in interpreting the language of the ordinance to determine the extent of the restriction upon use of the property, the language must be interpreted, where doubt exists as to the intention of the legislative body, in favor of the property owner, and against any implied extension of the restriction, and secondly, that in acting pursuant either to the enabling act or the ordinance promulgated under its authority, the procedural requirements of the statute or ordinance in question must have been strictly complied with." (p 8-1)

It has been held to be particularly essential that statutes should be clear and explicit where the abrogation of a rule of common law is involved, as here. *Jarvis v. Town of Claremont,* 83 NH 176, 139 A 747, 749.

■ When we scrutinize Ordinance No. 70 and read what follows the enactment clause we find only a description of all of certain areas "as shown by the following Lane County Zoning Maps; Sheets No. 4, 9 * * *," and *nothing more.* The reader of that enactment is prompted to ask: What was the legislative intention concerning the property described? What did the county commission "ordain" concerning it, or in its recognized equivalent terms, what did that court "adopt," "approve" or "enact" (*Haines v. City of Forest Grove,* 54 Or 443, 445, 103 P 775; *State ex rel Fleck v. Dalles City,* 72 Or 337, 351, 143 P 1127) by its action on Ordinance No. 70? We examine the document within its four corners in vain to find an answer nor can one who is interested in determining the effect upon the title to any land comprehended by the boundaries described therein. Its title, "Zoning

and Land Use Ordinance No. 70," adds nothing to our information. And, as will be noticed, the ordinance carries no verb which might, if present, give a hint of the legislative intent.

The plaintiff makes a concession to this obvious element of uncertainty of legislative purpose by asking the court to insert the verb it suggests. It proposes to give the legislation vitality, saying: "*  *  * obviously it was intended to say that 'All of those areas  *  *  * *are zoned* as shown on the following Lane County Zoning maps  *  *  *.' " The county urges us to adopt and read into the ordinance the two words, "are zoned," at the place indicated and argues that by so doing it will then express what the county commissioners intended.

■ The insertion of words inadvertently omitted or the alteration of the language of a statute by a court is a power always cautiously exercised and never employed unless it can be clearly seen that to do so is necessary to effectuate the legislative intent. *Webb v. State*, 217 Or 1, 10, 340 P2d 968 (1959). See, also, *Holman Transfer Co. v. Portland*, 196 Or 551, 565, 249 P2d 175, 250 P2d 929; Crawford, Statutory Construction (1940), 269, § 169; 2 Horack, Sutherland Statutory Construction (3d ed), 454, § 4924; ORS 174.010.

As stated by McQuillin, supra (Vol 6, Municipal Corporations, [3d ed], 136, § 20.56):

"*  *  * Its province is to construe only. Clearly, of course, an incomplete and uncertain ordinance cannot be perfected by judicial construction, since the judicial function is to find the intention expressed and not to find an intention not expressed. Thus, an omitted provision cannot be inserted by the court.  *  *  *"

Following a statement substantially similar to what is said in the foregoing citations relative to the insertion of omitted words, 37 Am Jur 830, Municipal Corporations § 190, adds the following, which is particularly pertinent to plaintiff's proposal here: "Where a paragraph in an ordinance remains in an unfinished state and *lacking a predicate,* it may happen that no rule of conduct is thereby prescribed, and consequently the sense of the paragraph is left wholly to speculation." (Emphasis supplied.)

That is precisely the situation found in Ordinance No. 70 and we decline to speculate on what affirmative action the county board had in mind by the enactment of that ordinance by supplying a missing predicate.

The dangerous results of such speculation, if we followed plaintiff's proposal, become more evident when we note the powers to "zone" or "rezone" involve at least three possible alternatives when accomplished by amendments: (1) the addition of new areas to those previously zoned; (2) the zoning of areas which in the basic ordinance were originally reserved for future zoning not at first assigned to a zoning district or given a specific zoning classification; and (3) to redistrict or reclassify in whole or in part an area previously assigned to a particular zoning district. It, therefore, follows that the inclusion of the words "are zoned" do not in themselves capture the elusive legislative intent and one is left to further speculate: how is the land of the defendants Winn if zoned to be classified? Is it a parcel added to the original area reserved for zoning or is it receiving its first zone classification, or is it a new zoning; that is, a change from one classification to another? In short, how is it to be zoned?

These elements of uncertainty and indefiniteness

are compounded when we examine Section V of Ordinance No. 4. It reads in part:

"In order to carry out the purpose and provisions of this Ordinance, certain areas shown on the maps entitled, 'Lane County Zoning Maps,' being a part of this Zoning Ordinance, are hereby classified in one of the following districts. * * *

"AGT AGRICULTURE, GRAZING, TIMBER-RAISING DISTRICT
PR PUBLIC RESERVE DISTRICT
RA SUBURBAN DISTRICT
R-1 SINGLE-FAMILY RESIDENTIAL DISTRICT
R-2 MULTIPLE-FAMILY RESIDENTIAL DISTRICT
C-1 LIMITED COMMERCIAL DISTRICT
C-2 COMMERCIAL DISTRICT
M-1 LIMITED INDUSTRIAL DISTRICT
M-2 LIGHT INDUSTRIAL DISTRICT
M-3 HEAVY INDUSTRIAL DISTRICT"

See, also, ORS 215.055.

Thus, we find that in order to accomplish a legislative "zoning" of a given area it must be identified as being within one of the 10 districts specified by Section V of the basic ordinance. Even were we to include the words which the plaintiff suggests as corrective, we are still left to conjecture as to which one of these 10 classifications the Winn property is assigned.

We cannot conceive of anything more important in a zoning ordinance than to establish with certainty the zone classification or district assigned to a given parcel of land. "The general rule may be said to be that an ordinance must be sufficiently certain as to the place or area of its operation so that persons subject to it will know its provisions and when they

violate it." 5 McQuillin, supra, at 118. This is especially important when there are 10 different classifications to select from. It is not only a matter of prime importance to the owner, but of importance to the officials charged with the ministrative duty of making a correct entry upon the zoning map.

Plaintiff further argues that the information necessary to clarify the legislative intent can be supplied by an examination of Sheet No. 2, referred to in Ordinance No. 70, and where there are imprinted upon areas owned by the defendants Winn the initials "AGT." (See Section V, supra, of Ordinance No. 4). This, plaintiff would have us believe, exemplifies the legislative intent as to the zoning district contemplated.

ORS 215.060 of the enabling act makes reference to the development pattern and maps authorized by ORS 215.050, as follows:

"* * * The resolution adopting the pattern, or any part covering one or more of the functional elements which may be included within the pattern, shall refer expressly to the maps, charts and descriptive matters forming the pattern or part thereof."

A map is a usual and valuable adjunct to a zoning ordinance. It is a graphic portrayal of the textual matter. But such a map is only supplemental to the text. The authority for each entry made thereon must be found in the written content of the basic ordinance or ordinances amendatory thereto. At best it is a pictorial illustration of the legislation as expressed in the documents to which it serves as an appendix.

We have earlier referred to Section I of the basic ordinance, which states that: "This ordinance [No. 4] shall consist of the text hereof and maps * * *" which are to be "identified by the approving signatures

of the County Judge, the chairman of the County Planning Commission, and the County Clerk." We construe this to mean that the maps to which reference is made are those adopted, approved or modified by Ordinance No. 4 or any subsequent ordinance coincidental with the adoption date of such ordinances. No provision is made concerning the manner in which subsequent ordained changes are to be entered, nor who is to have the responsibility for making the entries reflecting those authorized by the ordinance.

Sheet No. 2 (Exhibit B to the complaint) is a photocopy (35½ x 30 inches in size). At the right side of the map is a space about 3½ inches wide reserved for endorsements and the legend. In the upper portion of this margin appears the following:

"Approved by the affirmative vote of a majority of the Lane County Planning Commission after due public notices and hearings this *19th day of July, 1956.*

[signatures of Chairman and Secretary]

"Regularly passed & adopted by the County Court of the County of Lane, State of Oregon, this —— day of ———— 195—.

[signatures of three Commissioners]"
(Emphasis supplied.)

Immediately below the foregoing endorsements we read in printed letters:
"Ordinance No. 16   Jan. 31, 1951
        REVISIONS & ADDITIONS
    Date: May 27, 1955   Ord. No. 70
    Area East of S.P.R.R.   Zoned"

Lower in the reserved margin, and also printed, we find itemized the zone classifications as established

by Section V, supra, of the basic ordinance, together with their respective initial abbreviations. Turning to the map portion, we find the letters "AGT" and "RA" (Suburban District) variously printed to indicate its zone district classification.

It is apparent that this is not a sheet of the map adopted by Ordinance No. 4 on May 31, 1949. It will be observed that the identifying certificate is signed in behalf of the Planning Commission on the nineteenth day of July, 1956, seven years after the adoption of the basic ordinance. There is also the undated certificate of the County Commissioners as on the "—— day of ———— 195—." Our conclusion is that the instant map was prepared more than a year following the adoption of Ordinance No. 70 or that the County Commissioners in amending the zoning areas did so by the simple but unauthorized expedient of changing the map without the authority of any ordinance. It is, therefore, impossible to derive from "Sheet No. 2" any aid to the discovery of the objectives of the county commission when it adopted Ordinance No. 70 in 1955.

The defendants Winn in their brief effectively point up the problem with the following questions:

"* * * Does the fact that certain zones are marked on Sheet No. 2 mean that those are zones *being created* by Ordinance No. 70 or does it mean that they are pre-existing zones *being changed* by Ordinance No. 70? How are we to tell? Is the court supposed to guess? Perhaps it was intended to say that the areas shown on Sheet 2 within the designated boundary monuments are hereby zoned in the categories shown on the existing map. But it is equally probable that it was intended to say that those areas zoned AGT on the attached map are changed to zone RA or that those that are zoned

RA are changed to AGT or that some other changes were intended which we cannot even guess. * * *"

There is nothing to explain upon what authority the letters "AGT" were inserted, when they were inserted, or by whom. Section I of Ordinance No. 4 suggests the adoption of one or more maps certified as of that date, whereas, the identifying certificate on the map relied upon by plaintiff suggests the presence of a different map certified seven years later. Or were other zoning maps substituted in the intervening years? Ordinance No. 70 does not tell us of what map or maps "Sheet No. 2" is a part, that adopted in May, 1949, or that adopted in July, 1956, 14 months after the passage of Ordinance No. 70.

We also notice another deficiency in the certification. Although required by Section I-B of Ordinance No. 4 to join in the identifying certificate of the map adopted with that ordinance, the county clerk is not one of the certifying officials, but the apparent legal custodian (ORS 215.350). The plaintiff confesses the date deficiencies and in its reply brief states it "would seek to produce evidence that the date is erroneous," a tender which cannot avail it any advantage here when on demurrer we are considering only the present sufficiency of its complaint.

We conclude that Ordinance No. 70 is invalid for want of certainty and definiteness and that the judgment of the circuit court should be affirmed.