Argued March 7, reversed May 1, 1979

# DAVIS, *Respondent,*
*v.*
# WASCO INTERMEDIATE EDUCATION DISTRICT, *Petitioner.*
## (CA 9985, SC 25842)
### 593 P2d 1152

John R. Faust, Jr., of Hardy, McEwen, Newman, Faust & Hanna, Portland, argued the cause and filed the brief for petitioner.

Robert D. Durham, of Kulongoski, Heid, Durham & Drummonds, Eugene, argued the cause and filed the brief for respondent.

Before Holman, Presiding Justice, Tongue, Howell, Bryson, Lent and Linde, Justices.**

TONGUE, J.

Linde, J., specially concurring opinion.

---

**Holman, J., and Bryson, J., did not participate in this decision. (Bryson, J., retired April 1, 1979)

## TONGUE, J.

This case involves the review of a determination by the Fair Dismissal Appeals Board that the petitioner school teacher did not retain her permanent teacher status when she changed jobs in connection with the transfer of the special education program in which she worked from her former employer, The Dalles School District No. 12, to her new employer, Wasco Intermediate Education District.[1] The Court of Appeals reversed. 36 Or App 3, 583 P2d 1151 (1978). We granted review.

The central issue on review is whether petitioner as a public school teacher was a "public employe" for purposes of ORS 236.610 to 236.650, which grant a certain measure of job security to a "public employe" when the duties he or she performs are assumed by another governmental agency.

The facts of this case are not in dispute. Bettyjane Davis (hereafter Ms. Davis) was employed by The Dalles School District No. 12 as a "permanent teacher." As such, she had certain rights under the Fair Dismissal Law, ORS 342.805 et seq. Among these rights were the right to be dismissed only for cause, and the right to certain procedural protections attendant to dismissal.

Ms. Davis taught classes in a "special education" program for children with mental, physical, emotional or learning problems. In 1975 this program was transferred to the Wasco Intermediate Education District (hereafter Wasco IED). Ms. Davis was informed by District No. 12 that its program was being terminated, and she was offered the option of applying for another job with District No. 12 or seeking transfer to Wasco IED. She chose the latter, and Wasco IED thereafter employed Ms. Davis as a probationary

---

[1] Intermediate education districts were renamed education service districts by Oregon Laws 1977, ch. 481, § 1(2)(3).

teacher in its new special education program for the school years 1975-76 and 1976-77. Ms. Davis' employment was not renewed for the 1977-78 school year.[2]

Ms. Davis appealed her nonrenewal to the Fair Dismissal Appeals Board, contending that the provisions of ORS 236.610 to 236.650 were applicable to her case, and that she was therefore entitled to permanent teacher status in Wasco IED and the protection of the Fair Dismissal Law.

The FDAB disagreed, holding that a public school teacher was not a "public employe" for purposes of ORS 236.610 to 236.650; that "[h]aving elected to seek employment in a new district, Mrs. Davis must be held to have voluntarily changed her place of employment and consequently lost the protection afforded under the Fair Dismissal Law until she again achieved status as a permanent teacher," and that as Ms. Davis was not a permanent teacher in Wasco IED, the FDAB lacked authority to order her reinstatement.

The Court of Appeals reversed, holding that because it found "no persuasive reason for not following the plain words of ORS 236.610(2)," it followed that Ms. Davis was a "public employe" whose job security rights were preserved by ORS 236.610 et seq when she transferred from District No. 12 to Wasco IED. The Court of Appeals remanded the case to the FDAB, however, for a determination of whether Ms. Davis waived her claim to permanent teacher status by executing the two "probationary teacher contracts" with Wasco IED.

We granted review to determine the question whether a teacher is a "public employe" within the intended meaning of ORS 236.610(2) for purposes of ORS 236.610 to 236.650. This determination rests on an analysis of the following statutory provisions.

---

[2] Ms. Davis does not contend that Wasco IED failed to follow the procedures required by ORS 342.513 and 342.835 for nonrenewal of the employment of probationary teachers.

ORS 236.610 provides:

"(1) No public employe shall be deprived of his employment solely because the duties of his employment have been assumed or acquired by another public employer, whether or not an agreement, annexation or consolidation with his present employer is involved. Notwithstanding any statute, charter, ordinance or resolution, but subject to ORS 236.610 to 236.650, the public employe shall be transferred to the employment of the public employer who assumed or acquired his duties, without further civil service examination.

"(2) As used in subsection (1) of this section, 'public employe' means an employe whose salary or wages is paid from public funds * * *.

"* * * * *"

ORS 236.620 provides:

"A public employer who receives a transferred employe under subsection (1) of ORS 236.610, including an employe whose transfer is provided for by an agreement under ORS 190.010, shall place that employe on its employe roster, subject to the following:

"(1) If the employe was serving a probationary period with his employer at the time of transfer, his past service on probation shall apply on the regular probation requirements of the transferee employer.

"* * * * *

"(3) The employe shall retain the seniority he accrued under his prior employment, but no regular employe of the transferee employer shall be demoted or laid off by reason of that seniority.

"(4) The employe otherwise shall enjoy the same privileges and be subject to the same regulations as other employes of the transferee employer."

ORS 236.630 provides:

"A public employer who receives a transferred employe under subsection (1) of ORS 236.610 shall place that employe in a position comparable to the position he enjoyed under his prior employment, subject to the following:

"* * * * *

[265]

"(2) If the transferee employer finds that no comparable position exists under subsection (1) of this section, the employe shall be offered a lesser position, if such position is available, according to his qualifications, by the transferee employer. The finding and action of such employer under this subsection, and subsection (3) of this section shall be subject to a hearing upon the employe's request and subject to review under ORS 34.010 to 34.100.

"(3) If the transferee employer finds that no position exists, the employe shall be listed as a regular laid-off employe and shall have priority to appointment over other persons eligible for any position for which he is qualified."

Ms. Davis contends that because both Wasco IED and District No. 12 are public employers, and because at all times her salary was "paid from public funds," she is clearly a "public employe" for purposes of ORS 236.610(2) and is therefore entitled to all of the protections of ORS 236.610 to 236.650.

It is commonly stated, as a rule of statutory construction, that the words used in a statute are to be given their "plain" or "ordinary" meaning.[3] 2A Sands, Sutherland Statutory Construction 24, 48, §§ 45.08, 46.01 (4th ed. 1973). This court has also recognized the general rule that a court may not ignore the plain meaning of unambiguous words of a statute. *Fox v. Galloway,* 174 Or 339, 347, 148 P2d 992 (1944); *Lane County v. Heintz Const. Co. et al,* 228 Or 152, 157, 364 P2d 627 (1961).

The "plain or ordinary meaning" of the words of ORS 236.610(2)—" 'public employe' means an employe whose salary or wages is paid from public funds"—would appear to include public school teachers within the protection of ORS 236.610 to 236.650. These words, however, may not be read in isolation. As stated in 2A

---

[3] As pointed out in the concurring opinion by Linde, J., the various "rules" of statutory construction are not "rules" in the legal sense, but are no more than "aids" or "guides" in statutory construction.

Sands, Sutherland Statutory Construction, *supra,* at 56, § 46.05:

> "* * * A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole. Thus it is not proper to confine interpretation to the one section to be construed."

*Accord, City of Portland v. Duntley,* 185 Or 365, 380, 203 P2d 640 (1949); *Cal-Roof Wholesale v. Tax Com.,* 242 Or 435, 443, 410 P2d 233 (1966).

In other words, the remainder of the language of ORS 236.610 to 236.650 must be examined to see if it restricts or qualifies the broad definition of "public employe" in ORS 236.610(2), or raises a question as to the intent of the legislature. 2A Sands, Sutherland Statutory Construction, *supra,* at 49, § 46.01.

■ Upon examination of the language of ORS 236.610 to 236.650, we find sufficient ambiguity to make appropriate resort to extrinsic aids such as the legislative history to determine whether the legislature intended that a public school teacher be considered a "public employe" for purposes of ORS 236.610 to 236.650. As we stated in Gilbertson v. McLean et al, 216 Or 629, 641-42, 341 P2d 139 (1959):

> "That the courts may and frequently do resort to the history of a bill during its passage as an aid to interpretation where language of doubtful import is found in the statute is not open to doubt. * * * As stated in 2 Horack's Sutherland Statutory Construction (3d ed) 484, § 5003, this history 'has generally been the first extrinsic aid to which courts have turned in attempting to construe an ambiguous act.' * * *" (Citation omitted)

In particular, we find ambiguity in the apparent references in ORS 236.610 to 236.650 to merit system procedures, which raises a question as to whether non-merit system employes such as teachers were

intended to be included. First, ORS 236.610(1) provides that "the public employe shall be transferred to the employment of the public employer who assumed or acquired his duties, without *further* civil service examination." (Emphasis added) The implication here is that the public employe in question had already taken a civil service examination. Teachers do not take such examinations.

Second, ORS 236.630(3) provides that "[i]f the transferee employer finds that no position exists, the employe shall be *listed* as a regular *laid-off* employee * * *." (Emphasis added) This would apear to be a reference to the "layoff list"[4] that civil service employers are required to maintain by ORS 240.310. There is no such list required to be maintained for teachers.

In addition, although ORS 236.620(3) makes provision for the retention of "*seniority*," it makes no provision for the retention of that very unique form of job security enjoyed by teachers known as "permanent teacher status" or tenure. Permanent teacher status cannot be equated with seniority, and a question is raised as to whether in using the term "seniority" the legislature intended to provide protection for only those classes of government employes for which that term is of particular importance.

The legislative history of the statute sheds light on the intention of the legislature in utilizing such language. ORS 236.610 to 236.650 were enacted in 1963 at the urging of the AFL-CIO (*See* Minutes, House Committee on Local Government, March 26, 1963, Discussion of HB 1474), and were designed to guarantee certain rights to employes of a governmental agency when their functions or duties were transferred to another governmental agency on the merger

---

[4] Prior to 1975, ORS 240.310 used the term "reemployment" list, and ORS 240.360(2) stated that "[r]eemployment lists * * * of employes laid off in good standing shall be used first in filling any vacant position." Chapter 427, §§ 7 and 9 of Oregon Laws 1975 substituted the word "layoff" for "reemployment."

of those two agencies. Examples were given in the legislative hearings of the City of Portland's annexation of the City of Multnomah, and the merger of the Health Departments of the City of Portland and Multnomah County.

After examining the legislative history, we agree with Wasco IED's characterization of its focus as follows:

"In the discussions, particularly those at the hearings of April 2, 1963, in the House Committee on Local Government, it is apparent that the legislators were addressing problems caused by the various civil service laws. They were concerned with (1) Civil Service Law restrictions which would preclude the acquiring government from installing acquired employees anywhere but 'the bottom of the pile' and, conversely, (2) civil service restrictions which would inhibit demoting or laying off acquired employees where no comparable position is available after the acquisition."

Counsel for Ms. Davis has pointed to no discussion whatsoever in the reported legislative history (and we have found none) which indicates that teachers were intended or contemplated to be within the coverage of HB 1474. Wasco IED also notes that no representative from any teacher or education organization appeared at any of the hearings to comment on the bill, and contends that "[i]f this bill were intended to have the impact which this teacher claims for it, it is *inconceivable* that it could have gone through several hearings in the Oregon House and Senate without some appearance by educational groups." Although we attach no great weight to the absence of educational groups at the legislative hearings, we do find this fact to be of some interest because we agree with Wasco IED that the bill as construed by Ms. Davis would have had a significant impact on the then-established laws governing teacher employment.

HB 1474 was enacted in 1963. Then, as now, the legislature had provided in ORS 342.005 to 342.990 a

comprehensive statutory scheme covering teacher employment separate from its treatment of other government employes. In particular, the Teachers' Tenure Law, ORS 342.205 to 342.330, which has since been replaced by the Fair Dismissal Law, ORS 342.805 to 342.955, dealt with the matters of permanent and probationary teacher status.

If ORS 236.610 to 236.650 were construed by this court to cover the teacher as a "public employe," the following changes and inconsistencies would result in relation to the specific laws governing the employment of teachers. First, ORS 236.610 to 236.650, by granting permanent teacher status to a transferring teacher, would alter the definition of permanent teacher found in former ORS § 342.210(2). That section provided that:

> " 'Permanent teachers' includes all teachers who have been regularly appointed and employed by any such school district for not less than three successive school years * * *, and have been *re-elected* after the completion of the three years for the next succeeding school year." (Emphasis added)[5]

This definition reflects the special relationship between the school district and one of its permanent teachers. Consistent with this special relationship, neither the Teachers' Tenure Law nor the Fair Dismissal Law provides for the retention of permanent teacher status upon transfer from one school district to another.

Second, as noted above, ORS 236.630(3) would require school districts to establish "layoff lists" for teachers. This was not required under the laws relating to teacher employment as they existed in 1963, and it is not required under those laws as they exist today.

---

[5] Current ORS 342.815(4) is even clearer:

" 'Permanent teacher' means any teacher who has been regularly employed by a fair dismissal district for a period of not less than three successive years, * * * and who has been reelected *by such district* after the completion of such three-year period for the next succeeding school year." (Emphasis added)

In addition, laws relating to teacher employment that have been passed *since* 1963 are inconsistent with the construction of ORS 236.610 to 236.650 to cover the teacher as a "public employe." The provision of ORS 236.630(3) that a transferred employe for whom no position exists "shall have priority to appointment" over other eligible persons for a future position is inconsistent with ORS 342.865(1)(j), enacted in 1973 (Oregon Laws 1973, ch. 298, § 4). ORS 342.865(1)(j) provides that if there is a reduction in permanent teacher staff, the district "shall make every effort to transfer teachers of courses scheduled for discontinuation to other positions for which they qualify" and that "[m]erit and seniority shall be considered in determination of a teacher for such transfer." No *priority,* however, is given.

Finally, ORS 236.630(2), by providing that a transferred employe laid off or assigned to a lesser position when no comparable position exists may request a hearing and thereafter seek a writ of review under ORS 34.010 to 34.100, establishes a different appeal procedure than that available to a dismissed teacher under current ORS 342.905. ORS 342.905 provides that a dismissed teacher must seek review by the Fair Dismissal Appeals Board prior to obtaining judicial review under ORS 183.480. It would seem unlikely that the legislature would intend that teachers laid off by reason of a transfer of duties from one school district to another, for instance, should follow a different appeal procedure than teachers dismissed pursuant to ORS 342.865(1)(j) because of a reduction in permanent teacher staff.

In short, if ORS 236.610 to 236.650 are construed to cover teachers, such a construction would work significant changes in the comprehensive and specific laws governing the employment of teachers, both as they

[271]

existed in 1963 and as they exist today.[6] It is difficult to believe that the legislature intended such changes and inconsistent treatment when no mention or explanation of such is found in the legislative history, either in 1963 or at the time of later amendments to the laws relating to teacher employment.

■■ There are two more rules of statutory construction that are of particular application in this case. First, as stated by this court in *Thompson v. IDS Life Ins. Co.,* 274 Or 649, 656, 549 P2d 510 (1976):

> "* * * [A] specific or special act controls over a general act. This is the rule even if, as here, the general act was enacted later. * * * Absent a plain indication of intent to repeal the special act, the special act will continue to have effect and the general act will be modified by construction so the two can stand together; one as the general law of the state and the other as the law of the particular case or as an exception to the general rule. * * *" (Citations omitted)

*See also* 2A Sands, Sutherland Statutory Construction, *supra,* at 315, § 51.05.

■ Second, whenever possible the court should construe together statutes on the same subject as consistent with and in harmony with each other. Again, as we stated in *Thompson, supra,* 274 Or at 655:

> "Interpreting the Public Accommodations Act as not including insurance would avoid any conflict between the two state agencies otherwise involved

---

[6] We also note with interest that in 1963, when the legislature adopted ORS 236.610 et seq relating to "public employes," it had been previously provided, by ORS 342.325, that:

"*Rights of teachers in merged districts.* Whenever any school district is merged into any other district of the same or a different class, the teachers in the district that loses its identity through such merger shall enjoy the rights of probationary teachers who have completed one year's service in the enlarged district."

ORS 342.325 was repealed by Oregon Laws 1965, Ch. 608, § 21.

*See also* ORS 342.508, repealed by Oregon Laws 1973, Ch. 298, § 9.

Any resulting inconsistency between such provisions and ORS 236.610 et seq was not briefed or argued by the parties, however, and we attach no weight to them as a basis for our decision in this case.

and prevent the possibility of obstruction or interference with the Insurance Commissioner's statutory powers and duties under ORS 746.015 and 737.310 by the Labor Commissioner."

*See also* 2A Sands, Sutherland Statutory Construction, *supra,* at 290, § 51.02.

Applying these rules to this case, the specific statutory provisions relating to teachers, ORS 342.120 et seq, should control over the general terms of ORS 236.610 to 236.650 in that latter statute's general treatment of "public employe(s)." ORS 236.610 to 236.650 should be read in harmony with the statutory provisions governing the employment of teachers by reading the term "public employe" in 236.610(2) to *exclude* teachers. Such an approach is in keeping with both the legislative history of HB 1474, and the use of language in ORS 236.610 to 236.650 (such as "further civil service examination," "seniority," and "listed as a regular laid-off employe") inconsistent with inclusion of public school teachers within the coverage of the statute.

■ For these reasons we conclude that the phrase "public employe" in ORS 236.610(2) does not include teachers in public schools; that the petitioner therefore did not retain her permanent teacher status by virtue of ORS 236.610 to 236.650 upon her transfer from District No. 12 to Wasco IED, and that the FDAB was therefore correct in refusing to order Ms. Davis' reinstatement. For all these reasons the decision of the Court of Appeals is reversed, and the decision of the FDAB is affirmed.[7]

**LINDE, J.,** concurring.

The Court's scrutiny of the legislative history of ORS 236.610-236.650, securing seniority rights of

---

[7] Because we find that petitioner had no permanent teacher status, she had no property interest sufficient to support her claim of a denial of procedural due process, even if that claim were properly raised. *See, e.g., Board of Regents v. Roth,* 408 US 564 (1972). We also need not reach the issue of waiver.

public employees during a transfer of governmental functions, and of the relationship of that statute to the laws dealing with the tenure and dismissal of public school teachers convinces me that petitioner cannot invoke the protection of ORS 236.610-236.650. I only add a few words to suggest, with deference, that this result does not depend on any "rules" of statutory construction.

Propositions such as that a later law generally displaces an earlier inconsistent one, or that when the legislature specifically addresses a narrow problem it probably means the problem to be governed by the specific statute rather than by a different law covering a more general class, or that individual sections of a statute, or related statutes, should be read in the context of the entire statutory scheme, are not themselves law unless enacted as such.[1] They are merely the common sense descriptions of the search for the governing legislative rule or policy among the many enactments that, over the years, formulate those rules and policies by express provisions, by implication, or sometimes even by omission. Each of these common sense approaches fits some cases but not others, each has "exceptions" and opposite-and-equal counterparts,[2] and each causes more harm than it is worth if it is not cheerfully ignored whenever it is an obstacle to understanding what the legislature enacted.

References to "rules," "maxims" or "aids" to statutory construction might pass as merely a difference in the style of opinions, which is a personal matter, if it were not for the risk that they will be mistaken by courts and counsel as directives for how to argue and decide statutory questions. Experience shows that

---

[1] *See, e.g.,* ORS 174.010-174.090, ORS 174.530-174.540, ORS 161.025(2).

[2] The classic demonstration was Karl Llewellyn's, in *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes are to be Construed,* 3 Vand L Rev 395, 401-406 (1950), listing 28 pairs of canons matched by "thrust but parry," each with authoritative citation. *See also Chapman Bros. v. Miles-Hiatt Investments,* 282 Or 643, 647 n. 2, 580 P2d 540 (1978).

such statements in prior opinions interpreting one particular statute are quoted back to us, and presumably to the trial courts and the Court of Appeals, as authority for interpreting another statute by applying the stated rules or maxims. If these seemingly authoritative statements of juristic method do not actually govern decisions on statutory interpretation, as in fact they do not, a party's reliance on them is not only a waste of time but may divert counsel and courts from a more fruitful line of inquiry into the particular legislation at issue. "Statutes are not fungible, and their interpretation is not a form of common law." *Anaconda Company v. Dept. of Rev.,* 278 Or 723, 727, 565 P2d 1084 (1977). To avoid such misdirection of energy and needless disappointment, I would not include the recitals of general constructional maxims in the opinion.