Argued and submitted April 12, affirmed November 8, 2000

John BAIN,
Charlene Andrews, Patrick Ohlsen, Herb Colley,
Melvin Grimes, Barbara Bachmeier,
Elizabeth Galick, Melvin Hermansen,
Jake Hurlbert, Timothy Keller, Margaret Lang,
Virgie Lorenz, Edward Moen, Loreen Olufson,
Keith Omlid, David Parsons, Dan Reynolds,
Jacqueline Shadoan, and Boyce Williams, Jr.,
*Appellants,*

*v.*

WILLAMETTE EDUCATION SERVICE DISTRICT,
*Respondent,*

*and*

STATE OF OREGON,
by and through its
Department of Education,
*Respondent.*

(98C-14640; CA A105140)

13 P3d 1021

Monica A. Smith argued the cause for appellants. With her on the briefs was Smith, Gamson, Diamond & Olney.

Mark B. Comstock argued the cause for respondent Willamette Education Service District. With him on the brief was Garrett, Hemann, Robertson, Paulus, Jennings & Comstock, P.C.

Brendan C. Dunn, Assistant Attorney General, argued the cause for respondent State of Oregon. With him on the

brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Wollheim, Judge, and Ceniceros, Senior Judge.

HASELTON, P. J.

## HASELTON, P. J.

Plaintiffs seek review of a declaratory judgment that they had no statutory rights to transfer their employment from intervenor Department of Education (DOE) to defendant Willamette Education Service District (WESD) when the programs for which they worked were transferred. The parties filed cross-motions for summary judgment. The trial court granted the motions of DOE and WESD, and denied plaintiffs' motion. On appeal, we affirm.

Because the facts are not in dispute, we review the rulings on the cross-motions for summary judgment to determine whether any party is entitled to judgment as a matter of law. *Protection Mutual Ins. Co. v. Mitsubishi Silicon*, 164 Or App 385, 387 n 1, 992 P2d 479 (1999), *rev den* 330 Or 331 (2000).

Before 1998, plaintiffs were teachers in the educational programs located within the Hillcrest and MacLaren youth correctional facilities. Those facilities are operated by the Oregon Youth Authority, and the teachers employed there were employed by DOE. In 1998, DOE contracted with WESD to provide the educational programs at Hillcrest and MacLaren. The contract did not transfer plaintiffs to WESD, nor did it require WESD to hire plaintiffs. In August 1998, plaintiffs were laid off by DOE.[1]

Plaintiffs initiated this action for declaratory relief, seeking a declaration that they had a statutory right to transfer their employment from DOE to WESD when the Hillcrest and MacLaren programs were transferred. Plaintiffs advanced two separate theories in support of their claim. First, they asserted that they were entitled to transfer employment from DOE to WESD pursuant to the Public Employee Transfer Law, ORS 236.605 *et seq*. Second, they asserted that they had transfer rights under ORS 342.845(3),

---

[1] Several of the plaintiffs eventually were hired by WESD to teach in the Hillcrest and MacLaren programs. However, they were hired as new employees and did not enjoy the benefits that they would have received had they been permitted to transfer their employment from DOE to WESD. *See generally* ORS 236.610(2)-(5) (explaining how salary, benefits and accrued leave are to be transferred); ORS 236.620 (explaining transfer of retirement benefits).

pertaining to transfers involving regional special education programs. Defendants[2] respond that the trial court correctly determined that neither the Public Employee Transfer Law nor ORS 342.845 applies to plaintiffs.

The Public Employee Transfer Law provides the following definition: " 'Public employee' means an employee whose compensation is paid from public funds." ORS 236.605(1). It also contains the following definition of "public employer":

" 'Public employer' includes the state, or cities, or counties, or special districts but not including school districts, or an Oregon nonprofit corporation any of which has accepted the transfer of a public program from a public employer in this state for maintenance and operation." ORS 236.605(2).

Plaintiffs assert that they are "public employees" as that term is defined in ORS 236.605(1), and that WESD is a "public employer" as that term is defined in ORS 236.605(2). If they are correct, then ORS 236.610(1) provides them with certain transfer rights:

"No public employee shall be deprived of employment solely because the duties of employment have been assumed or acquired by another public employer, whether or not an agreement, annexation or consolidation with the present employer is involved. Notwithstanding any statute, charter, ordinance or resolution, but subject to ORS 236.605 to 236.640, the public employee shall be transferred to the employment of the public employer that assumed or acquired the duties of the public employee, without further civil service examination."

The parties raise questions here as to whether plaintiffs are "public employees" as defined in ORS 236.605(1), whether WESD is a "public employer," as defined in ORS 236.605(2), and whether a "public program" was transferred. We turn first to the question whether plaintiffs are "public employees" as defined in ORS 236.605(1).

■ As noted, ORS 236.605(1) defines public employees as those whose compensation "is paid from public funds."

---

[2] We refer to defendant WESD and intervenor DOE collectively as "defendants" for simplicity.

Defendants do not dispute that plaintiffs, as employees of DOE, were paid from public funds. Rather, they argue that the Oregon Supreme Court's decision in *Davis v. Wasco IED*, 286 Or 261, 273, 593 P2d 1152 (1979), is directly on point, in that it contains a very broad holding that "teachers in public schools" are not public employees for purposes of ORS 236.610. Plaintiffs were "teachers in public schools" when they taught at Hillcrest and MacLaren, and undoubtedly they are attempting to assert that they are public employees for purposes of ORS 236.610. ORS 236.610 has not been changed in any significant way since the court decided *Davis*.[3]

Plaintiffs argue that *Davis* is distinguishable in three ways. Before discussing plaintiff's suggested distinctions, we must describe the analysis and holding in *Davis*. In that case, a school district employee was not permitted to retain her permanent teacher status when the school district special education program for which she worked was transferred to an intermediate education district. 286 Or at 263. As a permanent teacher, she had certain protections under the Fair Dismissal Law found in ORS chapter 342. Although the teacher transferred with the program, she was considered a probationary teacher, and her employment was not renewed after the probationary period. *Id.* at 263-64. She appealed to the Fair Dismissal Appeals Board (FDAB), contending that she was entitled to transfer pursuant to ORS 236.610. FDAB held that, because the plaintiff voluntarily changed her employment, she was not entitled to the protections afforded permanent teachers under the Fair Dismissal Law, and further held that she was not a public employee protected under ORS 236.610. *Id.*

The issue before the Oregon Supreme Court was whether a teacher was a public employee within the meaning of ORS 236.610. The court did not focus on the statutory definition of public employee as "an employe whose salary or wages is paid from public funds." In fact, the court acknowledged that the "plain and ordinary meaning" of the words used in that definition would appear "to include public school

---

[3] The definition of public employee now codified at ORS 236.605(1) was then in ORS 236.610(2), but was the same in substance.

teachers[.]" *Id.* at 266. However, the court indicated that, despite the "plain and ordinary meaning," the definition could "not be read in isolation," and looked to the context provided by ORS 236.610 to 236.650 "to see if it restricts or qualifies the broad definition of 'public employe' in ORS 236.610(2), or raises a question as to the intent of the legislature." *Id.* at 266-67. The court went on to find three contextual clues that the legislature had not really meant to define "public employe" as broadly as it had. First, the court noted that ORS 236.610(1) ensures that public employees may transfer without *further* civil service examination." 286 Or at 268 (emphasis by Supreme Court). The court noted that teachers are not required to take civil service examinations. *Id.* Next, the court noted that ORS 236.630(3) states that, if no position exists for the transferred employee, "the employe shall be *listed* as a regular *laid-off* employee[.]" *Id.* (emphasis by Supreme Court). The court concluded that that must be a reference to the "layoff lists" that certain employers were required to maintain pursuant to *former* ORS 240.310, which was inapplicable to teachers. *Id.* Finally, the court noted that ORS 236.620(3) uses the term "seniority," which the court apparently felt differed significantly from "that very unique form of job security enjoyed by teachers known as 'permanent teacher status' or tenure." *Id.*

Based on that context that purportedly cast doubts on the legislature's definition of "public employe," the court consulted the legislative history of ORS 236.610 *et seq.* The court noted that no legislative history indicated that the legislation applied specifically to teachers, and found it to be of "some interest" that no teacher or education organizations appeared at hearings on the bill. *Id.* at 269. The court then noted that the Teachers Tenure Law, later replaced by the Fair Dismissal Law, "dealt with the matters of permanent and probationary teacher status." *Id.* at 270. The court found it significant that neither the Teachers Tenure Law nor the Fair Dismissal Law "provides for the retention of permanent teacher status upon transfer from one school district to another." *Id.* Finally, the court noted that teachers who were dismissed due to reductions in staff had appeal rights through the FDAB, and concluded that it seemed "unlikely that the legislature would intend that teachers laid off by

reason of a transfer of duties from one school district to another, for instance, should follow a different appeal procedure[.]" *Id.* at 271.

The court then noted that two maxims of statutory construction were relevant to its analysis: that specific acts control over general acts, and that a court should construe together statutes on the same subject as consistent with each other. The court concluded that the Fair Dismissal Law was a specific act that "should control over the general terms of ORS 236.610 to 236.650 in that latter statute's general treatment of 'public employe(s).'" *Id.* at 273. The court then concluded that ORS 236.650 could "be read in harmony" with the Fair Dismissal Law only by "reading the term 'public employe' in [ORS] 236.610(2) to *exclude* teachers." *Id.* (emphasis by Supreme Court).

Plaintiffs argue that *Davis* is distinguishable from the present case in three respects. First, they assert, they are not teachers who have rights under ORS chapter 342 (formerly known as the Fair Dismissal Law). In deciding *Davis*, plaintiffs assert, the court "clearly did not consider teachers such as Plaintiffs, who fall outside that statutory scheme." Second, they argue that the legislature's enactment of the definitions in ORS 236.605 in 1991 indicates "a different legislative intent" from that found by the *Davis* court. Finally, plaintiffs assert that the methodology for statutory construction that the court used in *Davis* is contrary to its current approach to statutory construction: Under the methodology announced in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993), the text of a statute provides "the best evidence of the legislature's intent," and is viewed in light of the statutory maxim "not to insert what has been omitted, or to omit what has been inserted." *Id.* at 611, *quoting* ORS 174.010. Also, words "typically should be given their plain, natural and ordinary meaning." *Id.*

■ Plaintiffs assert—and we agree—that the result in *Davis* would be impossible to reach had the court applied its current statutory construction methodology to the issue. In *Davis*, the court used statutory "context," as well as legislative history, to justify ignoring the "plain and ordinary meaning" of the definition of "public employe." Statutory context,

at least in the absence of any actual conflict between statutory provisions, simply does not provide a basis for ignoring an explicit statutory provision. *See generally Young v. State,* 161 Or App 32, 983 P2d 1044, *rev den* 329 Or 447 (1999) (where statutory text is unambiguous, contextual evidence that "fails to demonstrate explicitly an alternative and plausible legislative intent" does not create an ambiguity in the text).

We also agree with plaintiffs that the broadly-worded holding in *Davis* that "teachers in public schools" are not covered by ORS 236.610, based in great part on the court's conclusion that more explicit provisions of the Fair Dismissal Law were controlling, makes little sense in light of the undisputed fact that some "teachers in public schools," such as plaintiffs, are not subject to the provisions of the Fair Dismissal Law.

■ ■ Plaintiffs make very cogent arguments. However, their arguments are, in the end, arguments that *Davis* was wrongly decided. Those arguments do not provide *this* court with any grounds for actually distinguishing this case from *Davis*. It is true that, had the Oregon Supreme Court realized when it wrote *Davis* that not all public school teachers are subject to the Fair Dismissal Law, it might have crafted a narrower holding. It is also true that, had the court followed its current preferred methodology for statutory construction, it very likely would have found no ambiguity in the definition of "public employe." Nevertheless, under the "rule of prior construction," when the Oregon Supreme Court construes a statute, "that construction becomes a part of the statute as if written into it at the time of its enactment." *State v. Reid,* 319 Or 65, 69, 872 P2d 416 (1994). Recently, the court has declared its willingness to reconsider at least its prior *constitutional* rulings if it concludes that it applied an incorrect methodology and reached an incorrect result. *See Stranahan v. Fred Meyer,* 331 Or 38, 11 P3d 228 (2000). We, however, are not free to narrow that court's explicit holding that teachers in public schools are excluded from the definition of "public employee."

Plaintiffs' remaining argument, that the 1991 amendments to the statutes provide a basis for distinguishing *Davis,* is unpersuasive. Plaintiffs argue that the 1991

amendments, which moved the definition of "public employe[e]" from ORS 236.610(2) to ORS 236.605(1), "indicate a different legislative intent than what the court deduced from legislative history [in *Davis*]." Had the 1991 legislature actually made any significant change to the wording of the definition of public employee, or changed the manner in which that definition applied to the operative provisions of ORS 236.610(1), we would agree with plaintiff that the holding in *Davis* might not survive those changes.[4] However, the only wording change other than the change necessitated by the renumbering of the provisions was the substitution of the term "compensation" for the words "salary or wages." Nothing about that wording change calls into question the holding in *Davis*. In sum, the 1991 legislative changes in the definition do not suggest that the legislature intended to make a substantive change in the definition that would alter the holding from *Davis*.

We conclude that the trial court correctly determined that plaintiffs were not public employees for purposes of ORS 236.610. Because of our conclusion, we need not address the parties' arguments as to whether WESD is a "public employer" for purposes of ORS 236.610, or whether a "transfer of a public program" occurred.

■    Plaintiffs argue alternatively that ORS 342.845(3) provides them transfer rights. ORS 342.845(3) provides:

"No teacher shall be deprived of employment status solely because the duties of employment have been assumed or acquired by another school district or education service district in a state reorganization of a regional special education program. Where such reorganization occurs, a teacher shall be transferred to the employment of the school district or education service district which assumed or acquired program responsibilities. The teacher shall be allowed to transfer accrued sick leave and experience status

---

[4] Before 1991, ORS 236.610(2) provided, in part, that "as used in subsection (1) of this section, 'public employe' means an employee whose salary or wages is paid from public funds." In 1991, ORS 236.605(1) provided that " 'Public employee' as used in ORS 236.610 to 236.650 means an employee whose compensation is paid from public funds." Or Laws 1991, ch 918, § 3.

to the new district. However, the district to which the programs are transferred is obligated to hire displaced employees only to the extent that such would complement a cost effective staffing plan in the reorganized program."

Plaintiffs contend that DOE's contracting out of the Hillcrest and MacLaren programs constitutes a "state reorganization of a regional special education program." Defendants respond that the contracting out of the Hillcrest and MacLaren programs was not a "state reorganization of a regional special education program." Defendants also argue that ORS 342.845(3) applies only when "another school district or education service district" acquires special education programs pursuant to a reorganization, and thus applies only to transfers between school districts and education service districts. Thus, defendants reason, the statute does not apply to transfers from DOE, which is neither a school district nor an education service district. Plaintiffs respond that, although ORS chapter 342 contains no definition of "school district," a definition of "school district" found in ORS 329.007(10) specifically includes "a state-operated school" within the definition. Plaintiffs further argue that the Hillcrest and MacLaren programs are "regional special education programs" because they serve students in the juvenile corrections system, of whom approximately 70 to 80 percent are eligible for special education.

We turn to the question whether the transfer of a program from DOE to WESD can qualify as the acquisition of a program by "another school district or education service district." Although the definition of "teacher" applicable to ORS 342.845(3) is broad enough to encompass plaintiffs,[5] ORS 342.845(3), by its terms, applies only to those teachers whose duties of employment have been "assumed or acquired by *another* school district or education service district[.]" By using the word "another," the legislature expressed an intention to limit the scope of ORS 342.845(3) to transfers between and among school districts and education service districts.

---

[5] ORS 342.815(9) defines a teacher as "any person who holds a teacher's license as provided in ORS 342.125 or who is otherwise authorized to teach in the public schools of this state and who is employed half time or more as an instructor or administrator."

Defendants assert that the statute cannot apply to the present situation because DOE is not a "school district or education service district." Thus, defendants, argue, the program was not acquired by "another" school district or education service district. Plaintiffs counter that the education programs at Hillcrest and MacLaren are, in fact, "school districts," pointing out that, for example, ORS 329.007(10) defines "school district" to include not only common or union high school districts but also education service districts and state-operated schools. Assuming, without deciding, that the Hillcrest and MacLaren programs could be considered "school districts" for purposes of ORS chapter 329 due to the definition of the term in that chapter, that does not mean that they also are "school districts" for purposes of ORS 342.845(3).

We find ORS 330.005(2) to be dispositive of the question before us. While various other chapters of the ORS contain different definitions of "school district" that apply to specific chapters, ORS 330.005(2) contains a more generic definition:

"For purposes of the school laws of this state, unless the context requires otherwise:

"(a) 'School district' includes a common school district, a joint school district and a union high school district.

"(b) 'Common school district' means a school district, including a county school district formed under ORS chapter 333, other than a union high school district formed primarily to provide education in all or part of kindergarten through grade 12 to pupils residing within the district.

"(c) 'Joint school district' means a common or union high school district with territory in more than one county.

"(d) 'Union high school district' means a school district, other than a common school district, that is responsible for education in high school grades, but not in primary grades, formed in accordance with ORS 335.210 to 335.485 (1963 Replacement Part)."

Those definitions are not limited in application to ORS chapter 330 but apply to "the school laws of this state, unless the context requires otherwise." ORS 330.005(2). ORS

342.845(3) is a school law of this state. We find nothing in the context of ORS 342.845 that would suggest that that definition of "school district" would not apply. The Hillcrest and MacLaren programs are not school districts as defined in ORS 330.005(2), because they do not meet the definitions of "common school district," "joint school district," or "union high school district."[6]

As indicated above, ORS 342.845(3) applies to transfers between and among school districts and education service districts. Because neither DOE nor the Hillcrest and MacLaren programs are school districts or education service districts, plaintiffs were not entitled to transfer rights under ORS 342.845(3). Our resolution of this question obviates any need to address the parties' arguments about whether the Hillcrest and MacLaren programs are "regional special education programs."

Because plaintiffs were not public employees for purposes of ORS 236.610, and because the Hillcrest and MacLaren programs were not school districts for purposes of ORS 342.845(3), plaintiffs had no statutory entitlement to transfer their employment when DOE contracted with WESD to provide education programs at Hillcrest and MacLaren. The trial court correctly granted summary judgment for defendants.

Affirmed.

---

[6] An extended discussion on the statutory basis for the education programs at Hillcrest and MacLaren is not necessary at this point. Suffice it to say that the programs are "youth corrections education programs," and that it is clear from statutes pertinent to "youth corrections education programs" that they are not school districts as defined in ORS 330.005(2). *See, e.g.,* ORS 326.712 (DOE may contract with school districts to provide youth corrections education programs); ORS 327.026 (youth corrections education programs should receive state school funds in essentially the same manner and amount as school districts).