Argued and submitted October 22, 1982, affirmed February 2, 1983

CITY OF HILLSBORO,
*Petitioner,*

*v.*

HOUSING DEVELOPMENT CORP. OF
WASHINGTON COUNTY,
*Respondent.*

(No. 81-128, CA A24429)

657 P2d 726

William H. Stockton, Hillsboro, argued the cause and filed the briefs for petitioner.

Mark J. Greenfield, Portland, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

### GILLETTE, P. J.

The City of Hillsboro (City) appeals from a Land Use Board of Appeals (LUBA) decision reversing the City's determination that a 90-unit housing project for migrant farmworkers is not a use permitted outright in the City's A-2 (multi-family) zones. The City found that the project proposed by the Housing Development Corporation of Washington County (HDC), is only a "permitted" use and, as such, could be approved only through the City's conditional use permit process. LUBA reversed, holding that the project fits within the City's definition of "multi-family dwelling" and is therefore a use permitted outright in the A-2 zone. We affirm.

■ ■    The first question raised by this appeal is whether HDC's petition for review of the City's decision was timely filed with LUBA. Or Laws 1979, ch 772, § 4(6) provides, in pertinent part:

"(6)  Within 20 days after the date of transmittal of the record, a petition for review of the land use decision and supporting brief shall be filed with the board. * * *

"* * * * *."

LUBA received the record of the proceedings on December 8, 1981. The filing deadline for HDC's petition for review was therefore December 28, 1981. On that date, as HDC's representative was driving from the Portland area to Salem to file the petition, he encountered a traffic jam. Aware that the LUBA office normally closes at 5 p.m. and that he might be late because of the traffic jam, he telephoned LUBA to report his dilemma. A LUBA staff person agreed to stay at the office until he arrived; the petition was filed at 5:11 p.m.

LUBA Rule 16(J) (OAR 661-10-075(10)) provides:

"* * * The offices of the Board shall be open from 8:30 a.m. to 5 p.m. Monday through Friday, exclusive of legal holidays."

The City moved to dismiss HDC's petition, arguing that, because the petition was not filed within the office hours established by this rule, it was not timely filed. LUBA denied the motion, concluding that it was not required to dismiss HDC's petition,

"* * * [b]ecause we have been cited to no authority requiring us to take the extreme step of dismissing a petition upon a violation of a Board Rule and because we can find no prejudice by violation of our rule against the city * * *."

The City assigns this denial as error.

In a recent decision, *Hoffman v. City of Portland,* 294 Or 150, 654 P2d 1106 (1982), the Supreme Court left open the question whether LUBA has the authority to accept a petition for review that is delivered after 5 p.m. on the 20th day after transmittal of the record.[1] We hold that LUBA's ruling was not error.

First, HDC's filing did not violate the pertinent statute. Oregon Laws 1979, chapter 772, section 4(6) requires only that the petition and supporting brief be filed "within 20 days of transmittal of the record." Here, the petition and brief were filed within 20 days, albeit 11 minutes after LUBA's official closing time. The statute therefore does not require dismissal.

Second, the 5:11 p.m. filing did not violate a LUBA rule. Rule 16(J), which states that the offices "shall be open" from 8:30 a.m. to 5 p.m., was intended to establish minimum hours on which parties with LUBA business can rely. The rule prevents LUBA from closing its offices between 8:30 a.m. and 5 p.m.; it does not prohibit LUBA from opening its offices before 8:30 a.m. or from keeping them open after 5 p.m. Because HDC's filing does not violate Rule 16(J) the rule does not require dismissal.[2]

---

[1] In *Gordon v. City of Beaverton,* 52 Or App 937, 630 P2d 366 (1981), we held that LUBA had no authority to waive or extend the time for filing. The Supreme Court affirmed on other grounds and then made clear in *Hoffman v. City of Portland, supra,* that it had not approved our *Gordon* holding by its affirmance. Also in *Hoffman,* the Supreme Court explained that the appellate courts were not to rule on LUBA's authority to accept a "late" petition until LUBA had actually decided to do so. This is the first case to come before us where LUBA has accepted a petition that was arguably filed late.

[2] Even if the filing had violated Rule 16(J), that violation would not require dismissal. LUBA Rule 2 (OAR 661-10-005) provides:

"* * * These rules shall be interpreted to effectuate these policies and to promote justice. Technical violations of these rules which do not affect substantial rights or interests of parties or of the public shall not interfere with the review of a petition."

The City next contends that LUBA erred by concluding that the proposed housing project is a use permitted outright in an A-2 residential zone. Section 28 of the City's zoning ordinance identifies the uses permitted outright in that zone.

"Section 28: *Uses Permitted Outright.* In an A-2 zone the following uses and their accessory uses are permitted outright:

"(1)   A use permitted outright in an A-1 zone.

"(2)   Multi-family dwelling.

"(3)   Boardinghouse, lodging, or roominghouse." City of Hillsboro Zoning Ordinance No. 1945.

The ordinance defines "dwelling, multi-family" as "a detached building containing three or more dwelling units in one ownership." "Dwelling unit" is defined as "one or more rooms designed for occupancy by one family and not having more than one cooking facility * * *."

LUBA's decision was based on its determination that "multi-family dwelling" is a "precise term" under *Springfield Education Assn. v. School Dist.*, 290 Or 217, 621 P2d 547 (1980). Because the HDC project fit squarely within the structural definitions in the City's ordinance, it is a "multi-family dwelling." LUBA held that it is therefore permitted as an outright use.

■      On appeal, the City argues that LUBA and we should defer to the City's interpretations of its ordinance. We recognize the validity of the general rule the City asserts, *i.e.*, that reviewing bodies should defer to a local government's interpretation of its own ordinance if that interpretation is reasonable. However, that rule has no application in this case.

■■■      It is a fundamental tenet of statutory construction that an unambiguous statute should not be interpreted. If the language is plain, it must be applied as written, unless that application would produce an absurd and unreasonable result. *State v. Collins*, 43 Or App 265, 602 P2d 1081 (1979);

A filing that occurred 11 minutes after closing time is precisely the sort of technical violation at which Rule 2 is aimed. Absent prejudice to the City, dismissal would be inappropriate.

*see also Curly's Dairy v. Dept. of Agriculture,* 244 Or 15, 415 P2d 740 (1966). The same rules that govern statutory construction also apply to the construction of municipal ordinances, *Lane County v. Heintz Const. Co., et al,* 228 Or 152, 364 P2d 627 (1961), and the City may not interpret or refine its definition of "multi-family dwelling" unless that definition is ambiguous. *See State v. Brooks, supra.*

■ The City argues that

"* * * the term 'multifamily dwelling' cannot be stated to be an exact term when the zoning ordinance is read as a whole and in conjunction with the required state and local planning guidelines."

Cast in terms of the general rules of statutory construction rather than in *Springfield* terms, the City's argument seems to be that the term "multi-family dwelling" and its definitions are ambiguous by virtue of their context. Saying that does not make it so, and we find no ambiguity in the ordinance.[3] There was, therefore, no error.

Affirmed.

_____

[3] We note in passing that allowing the City to prevail on this theory would cause serious problems. It is clear from the contents of LCDC Goal 10 and related housing statutes (ORS 197.295 to 197.307) that one of the purposes of the statewide land use planning laws is to provide certainty about the types of housing permitted in any given area. If the City is allowed to "refine" or interpret its definition of "multi-family dwelling" on an *ad hoc* basis, all certainty would be lost. The City would have the power to say, "Yes, your project fits within our definition of 'multi-family dwelling,' but it's really not what we had in mind so you'll have to go through our conditional use process." Such an approach is inconsistent with the housing portions of the statewide land use planning system.