Argued and submitted March 8, affirmed September 15, petition for review denied November 30, 1999 (329 Or 527)

William HOLBROOK
and Linda Holbrook,
dba Grand and Noble, a Partnership,
*Respondents,*

Larry HILTON,
*Intervenor-Respondent,*

*v.*

PRECISION HELICOPTERS, INC.,
*Appellant.*

PRECISION HELICOPTERS, INC.,
*Third-Party Plaintiff,*

*v.*

GOWAN COMPANY, L.L.C.,
*Third-Party Defendant.*

(C960901CV; CA A101002)

986 P2d 646

Robert J. Ericsson argued the cause for appellant. With him on the brief was Ericsson Ridgeway, P.C.

Patty Rissberger argued the cause for respondents. On the brief were Leonard D. DuBoff and DuBoff & Ross.

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, Philip Schradle, Assistant Attorney General, and Janet L. Prewitt, Assistant Attorney General, filed a brief *amicus curiae* for Oregon Department of Agriculture.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

## LINDER, J.

Defendant, Precision Helicopters, Inc., appeals from a judgment entered in favor of plaintiffs in this action for damages incurred when defendant sprayed plaintiffs' Christmas tree crop with a pesticide. Defendant's primary assignment of error challenges the trial court's conclusion that ORS 634.172(3) does not prohibit the admission of evidence regarding the Oregon Department of Agriculture's (ODA) determination of the source and cause of crop damage. For reasons that follow, we affirm.

In the spring of 1996, plaintiffs' crop of 28,000 trees became infested with aphids. Plaintiffs hired defendant, a helicopter crop-dusting service, to spray the crop aerially with an insecticide. Shortly after being sprayed, the trees began to show signs of damage that followed the swath pattern of the spray. Plaintiffs brought this negligence action against defendants, contending that the chemical mixture used to spray the trees was contaminated. At trial, plaintiffs proffered ODA laboratory reports as evidence and elicited testimony from an ODA investigator regarding the cause and source of the damage to the trees. Defendant objected, arguing that the reports and the investigator's testimony are inadmissible because the ODA is prohibited by ORS 634.172(3) from delving into the source and cause of damage in its investigations.[1]

The trial court overruled defendant's objections, concluding that ORS 634.172(3) does not limit the use of ODA

---

[1] ORS 634.172(3) provides as follows:

"Upon receiving a report of loss as provided by this section:

"(a) The department may investigate, examine and determine the extent and nature of the damage alleged to have been caused to property or crops. *The department shall not determine the source of the damage, the person who may have caused the damage or the financial extent of the loss or damage.* The department shall prepare and file in its office a report of the investigation, examination and determination. Copies of the report made by the department may be given upon request to persons who are financially interested in the matter.

"(b) The department at the request of, and without cost to, any persons financially interested in the matter may undertake to mediate an equitable settlement of the controversy."

(Emphasis added.)

investigator testimony or reports as evidence in civil actions. Defendant assigns error to those rulings, arguing that, because ORS 634.172(3) provides that the ODA may not *determine* the source or cause of damage, ODA investigators are prohibited from *testifying* regarding the source or cause of damage.[2] For the same reason, defendant asserts that the ODA's laboratory reports are inadmissible. We review the trial court's interpretation of ORS 634.172(3) for errors of law. As with any issue of statutory interpretation, we begin by examining the statute's text and context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993).

■     ORS 634.172(3) is part of an extensive scheme of pesticide regulation, known as the State Pesticide Control Act. ORS ch 634. The ODA's charge is broad and includes registering pesticides, licensing persons for pesticide application, and regulating pesticide use in restricted and protected areas. *See* ORS 634.016 to ORS 634.042 (registration, labeling, and use); ORS 634.106 to ORS 634.146 (licensing and certification); ORS 634.206 to ORS 634.242 (protected and restricted areas). The duty of enforcing the act also is relegated to the ODA. *See* ORS 634.322 (enforcement) and ORS 634.900 (penalties). As part of that function, the ODA is authorized to conduct investigations. *See generally* ORS 561.275 (ODA may inspect licensees' premises); ORS 561.279 (ODA may exercise subpoena power in its investigations, audits, and hearings).

    The ODA also serves as a monitor and mediator of private disputes over damage caused by pesticide applications. Before bringing an action based on damage caused in the application of a pesticide, the plaintiff must timely file a report of loss with the ODA and provide notice to the party who allegedly caused the damage. ORS 12.272(1) and ORS 634.172(1). After receiving a report of loss, the ODA "may investigate, examine and determine the extent and nature of the damage alleged to have been caused to property or crops." The ODA is instructed, however, that in the course of such an

---

    [2] The ODA investigator ultimately testified that the mix tank used by defendant was contaminated with an herbicide and that the herbicide contamination had caused the damage to the trees.

investigation it "shall not determine the *source* of the damage, the *person who may have caused* the damage or the *financial extent* of the loss or damage." ORS 634.172(3)(a) (emphasis added).

Assuming that ORS 634.172(3) applies to the facts of this case,[3] that statute does not prevent plaintiffs from presenting evidence of the ODA's findings on the source and cause of damage. Nor does the statute purport in any other way to be a rule of evidence that applies in civil cases between private parties. Nothing in the language or context of ORS 634.172(3) can plausibly be read to call for an across-the-board prohibition on the use of the ODA's investigatory conclusions as evidence in civil actions. In similar statutory schemes, the legislature has declared *expressly* that certain accident reports are inadmissible. *See, e.g.,* ORS 654.720 (public utility accident reports may not "be used as evidence in any action for damages in any suit or action arising out of any matter mentioned in the report"); ORS 830.490(3) ("[n]o such report [of the State Marine Board] shall be used as evidence in any trial, civil or criminal, arising out of an accident"). That fact supports our construction of ORS 634.172(3) by demonstrating that the legislature knows how to provide for evidentiary limitations when it intends them. For us to graft a similar evidentiary exclusion onto this statute would violate the rule that, in construing statutes, we are "not to insert what has been omitted, or to omit what has been inserted." ORS 174.010.

---

[3] The ODA received both a report of a regulatory violation and plaintiffs' report of loss. The trial court specifically found that the ODA initiated its investigation pursuant to the ODA's general investigatory authority to regulate pesticide use and potential regulatory violations and that it did so before the date that plaintiffs filed their loss report. Defendant does not challenge those factual findings, and neither party addresses their significance. Arguably, whatever evidentiary limitation ORS 634.172(3)(a) might impose would be inapplicable to an ODA investigation made pursuant to the agency's regulatory powers and duties, rather than one made in response to a private report of loss. To reach that conclusion, however, we first would have to analyze whether ORS 634.172(3)(a) contains an evidentiary limitation and, only then, determine whether the statute applies to regulatory investigations of the kind that the trial court found was made in this case. Because we conclude that the statute does not operate as a limit to the admissibility of evidence in any event, it is unnecessary to decide whether, if it did, it would apply in this case given the trial court's findings.

The cases that defendant relies on are inapposite because they involve statutes or regulations that *expressly* limit the evidentiary use of investigatory reports or findings in specified proceedings. In *Carlson v. Piper Aircraft Corp.*, 57 Or App 695, 703-05, 646 P2d 43, *rev den* 293 Or 801 (1982), for example, we concluded that a National Transportation Safety Board (NTSB) investigator could not testify regarding the cause of the mid-air breakup of an airplane. We based our decision on an NTSB regulation that expressly prohibited NTSB employees from giving opinion testimony concerning the cause of accidents. *Id.* at 703 n 8 (quoting 49 CFR § 835.3); *see also Swett v. Schenk*, 792 F2d 1447, 1451 (9th Cir 1986) (outlining NTSB statutory and regulatory framework). That regulation extended statutory prohibitions on the use of NTSB accident reports as evidence in suits arising out of accidents under investigation. *See id.*; *see also Huber v. United States*, 838 F2d 398, 401-02 (9th Cir 1988) (Coast Guard reports inadmissible in negligence action under regulation precluding their use to fix civil responsibility). As already acknowledged, ORS 634.172(3) simply does not contain an express or other textual or contextual basis to limit the use of ODA investigatory findings as evidence. Defendant's argument reduces to an invitation to imply an evidentiary limitation for policy reasons in the guise of statutory interpretation. The trial court properly concluded that ORS 634.172(3) does not require that the reports or the investigator's testimony be excluded.

■ Defendant also assigns error to the admission of the laboratory reports over its hearsay objection. The trial court concluded that the reports fell under the "business record" exception to the hearsay rule. OEC 803(6). Defendant asserts that plaintiffs failed to establish the requisite foundation for admission of the reports because "[n]o one with personal knowledge testified as to how the laboratory work was done nor how the report was prepared." Defendant misunderstands the requirements for establishing a business record. A "business record" includes:

> "A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a

regularly conducted business activity, and if it was the regular practice of that business activity to make the * * * report, * * * all as shown by the testimony of the custodian or *other qualified witness*, unless the source of information or the method of circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this subsection includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

OEC 803(6) (emphasis added). The rule requires that the record be made by a "person with knowledge" but does not require the authenticating witness to be the same person who made the record. On appeal, defendant does not argue that the witness was otherwise unqualified.[4] The trial court did not err in admitting the evidence over defendant's hearsay objection.[5]

■     In its six remaining assignments of error, defendant raises various challenges to the trial court's award of damages. On each of those claims of error, defendant fails to set forth sufficient portions of the record to demonstrate that error was adequately raised and preserved below. Failing to demonstrate that error is preserved violates ORAP 5.45. *See Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 150, 881 P2d 119 (1994). We are not obligated to take it upon ourselves to review the record to find that matters assigned as error are preserved and may instead decline consideration of those assignments. ORAP 5.45(3). We have, nevertheless, reviewed the record in the course of deciding the other issues presented.

---

[4] Below, defendant took issue with the adequacy of the foundation to establish that the records fit within the business records exception, but it does not renew that argument on appeal. Defendant's only other challenge to the admission of the records is that they contain improper opinion testimony, an issue that is not framed by his assignment of error and appears not to have been raised and preserved below. Given the multiple problems with defendant's latter challenge, we do not reach it. *See* ORAP 5.45(2) (assigned error must have been preserved in lower court); ORAP 5.45(3) (assigned error must not require court to search for pertinent portions of the record); ORAP 5.45(4) (assigned error must be specific and must clearly identify and set forth verbatim the ruling that is being challenged).

[5] Given that disposition, we necessarily reject defendant's third assignment of error, in which defendant asserts that the arguments made in its first and second assignments of error justify reversal of the trial court's denial of defendant's motion for directed verdict based on insufficiency of evidence on the cause of the damage.

■        From our review, we conclude that none of the assignments of error relating to the damages award was adequately preserved. At the close of evidence, the trial court invited the parties to submit written closing arguments along with proposed findings of fact and conclusions of law. *See* ORCP 62. In its submission, defendant argued that plaintiffs had failed to "prove any recoverable damages" because "[t]he fair market value of the trees in 1997 was greater than the $184,000 claimed by Plaintiffs in this lawsuit" and because any damages suffered by plaintiffs were due to their failure reasonably to mitigate damages. The trial court ultimately concluded that plaintiffs were entitled to damages measured by taking "the difference between the fair market value of the damaged trees prior to the damages occurring and the fair market value of the trees after the damages occurred." On appeal, defendant makes two related arguments: (1) the trial court did not use the proper legal measure of damages and, as a result, failed to consider the projected value of the trees had they been harvested at maturity; and (2) plaintiffs' evidence on damages was legally insufficient because they failed to present evidence of the crop's maturity value or of the reasonableness of their efforts to mitigate damages.

■■        Legal insufficiency of the evidence may be raised on appeal only if the issue was raised below by a motion pursuant to ORCP 54 B(2) or a timely equivalent. *Falk v. Amsberry*, 290 Or 839, 843-45, 626 P2d 362 (1981). Defendant moved for a directed verdict at the close of plaintiffs' case but did not at that time raise any issues regarding damages. Nor did defendant object to the trial court's proposed findings of fact and conclusions of law. *See* ORCP 62 B. Although defendant was not required to object specifically to the trial court's findings of fact, defendant was obligated to call the potential errors to the attention of the trial court in *some* form or manner. *Sappington v. Brown*, 68 Or App 72, 77, 682 P2d 775, *rev den* 298 Or 238 (1984). Our review of the record does not reveal that defendant raised any of the potential errors regarding damages below. Nor does defendant properly direct us in its brief to where the potential errors were preserved. We therefore decline to consider them further.

        Affirmed.