Submitted on record and briefs December 1, 2000, affirmed May 9, 2001

## STATE OF OREGON,
*Respondent,*

*v.*

## SPENCER MOORE,
*Appellant.*

## Z763659; A109708

25 P3d 398

Spencer Moore filed the brief *pro se*.

Kaye E. McDonald, Assistant Attorney General, filed the brief for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

Armstrong, J., dissenting.

## EDMONDS, P. J.

Defendant appeals from a conviction for drinking in public in violation of Portland City Code (PCC) 14.24.030. We affirm.

Defendant purchased a beer at Red's Brew Pub in the Portland International Airport food court. He drank most of the beer while seated at a table in the food court. Defendant then carried his beer glass with him while shopping at another store in the airport terminal and sat down at a table in the "D and E seating area," to wait for his wife, who was meeting passengers on an arriving flight. A Port of Portland police officer approached defendant and asked him if the glass on the table contained beer. Defendant immediately picked up the glass, drank the remaining beer, and replied, "Not anymore." The officer concluded that defendant was intoxicated and took him into custody. Defendant was later released and cited with "Drinking in Public," a violation of PCC 14.24.030.[1]

Defendant pled "not guilty." After the state put on its case-in-chief, defendant's counsel made a "motion for an order of dismissal" on the ground that the state had failed to prove that defendant was drinking within a public right-of-way. The trial court denied the motion, stating:

> "Well, I think that they meet their burden, at least to get past that point. The officer testified that this was an area for the public to wait who don't want to go through the metal detectors. It's a public seating area. And I think that's enough and that it was in an airport terminal—the terminal of an airport. So, it certainly gives the inference that it is a public—it's an area dedicated to public use. So, I'm going to deny the motion."

Defendant then put on his case-in-chief. After hearing all the evidence, the trial court ruled:

> "I find that it is a public area place and the * * * ordinances do not have a knowledge requirement. They are basically

---

[1] PCC 14.24.030 provides:

"It is unlawful for any person to drink alcoholic liquor upon any street, sidewalk, or other public right of way."

unlawful for a person to drink alcoholic liquor on a public right-of-way. [Defendant] was drinking alcoholic liquor in a public right-of-way.

"There are public policy reasons for having alcoholic liquor contained within a small space. The airport is a public right-of-way, and I'm going to find [defendant] guilty."

Defendant was fined $150, of which $50 was suspended.

Defendant appeals, arguing that the trial court erred in denying his motion.[2] Specifically, he argues (1) that the trial court convicted him of a violation of the wrong ordinance—that the only ordinance applicable to his conduct was Port of Portland Ordinance 348, a provision under which he was not charged;[3] (2) that he was not given notice that the area where he consumed the beer was a public right-of-way; and (3) that there was insufficient evidence to show that the area in which defendant drank his beer was a "public right-of-way," within the meaning of PCC 14.24.030.

Defendant's first two arguments depend on his theory that PCC 14.24.030, enacted in 1983, was implicitly repealed and replaced by Port of Portland Ordinance No. 348, enacted in 1989. The latter ordinance requires the designation of areas in which alcoholic beverages can be consumed legally. Although defendant argued generally to the trial court that there were no signs prohibiting the consumption of alcohol posted in the area in which he was arrested, we can find no mention in the record below of the doctrine of repeal by implication.[4] Under ORAP 5.45, we will decline to review

---

[2] For purposes of review, we treat defendant's motion for an order of dismissal as a motion for a judgment of acquittal under ORS 136.445.

[3] The Port of Portland ordinance provides:

"(1)  No person shall drink any alcoholic liquor at the airport:

"* * * * *

"(c)  In those portions of the terminal building open for use by the general public, including those portions designated for a specific use, except within premises licensed by the Oregon Liquor Control Commission."

[4] The doctrine of "repeal by implication" is based on the common-law idea that the enactment of a statute or ordinance that is irreconcilable in whole or in part with an earlier statute or ordinance serves to impliedly repeal or amend the earlier legislation. *See, e.g., State ex rel Huddleston v. Sawyer*, 324 Or 597, 604, 932 P2d 1145, *cert den* 522 US 994 (1997); *State ex rel Adams v. Powell*, 171 Or App 81, 15 P3d 54 (2000). The doctrine is employed sparingly, *Powell*, 171 Or App at 97, and can apply only where the prior and subsequent legislative enactments are both the acts of the same legislative body.

an issue on appeal unless it is first raised to the trial court. *See Holbrook v. Precision Helicopters, Inc.*, 162 Or App 538, 544-45, 986 P2d 646, *rev den* 329 Or 527 (1999). The requirement of preservation of error expressed by the rule exists so that the parties can litigate and the trial court can decide issues that may obviate the necessity for appeal. *State v. Cunningham*, 164 Or App 680, 687, 995 P2d 561, *rev den* 331 Or 283 (2000). Here, we decline to reach defendant's first two arguments because the trial court did not have the opportunity to rule on them.

Defendant's remaining argument is that there was insufficient evidence to show that he was within a "street, sidewalk, or other public right-of-way" when he was arrested. At trial, defendant directed the trial court's attention to the definition of "public right of way" found in PCC 16.90.280, which is part of Title 16, the Portland city traffic code. The trial court, using the "other area dedicated for public use" portion of that definition, found that the area of the airport terminal where defendant was seated was an area dedicated for public use. However, PCC 16.90.001 provides that the definition of "public right of way" found in PCC 16.90.280 applies only to uses of that phrase in Title 16, the traffic code. Thus, PCC 16.90.280 does not govern this nontraffic matter.

■ Section 14.04 of the PCC provides definitions for only two terms: "alcoholic liquor" (PCC 14.04.010) and "peace officer" (PCC 14.04.020). We are not aware of any other Portland city ordinance that defines a public right-of-way for purposes of PCC 14.24.030. We turn to the standard methodology for the interpretation of the meaning of an ordinance. *City of Hillsboro v. Housing Devel. Corp.*, 61 Or App 484, 489, 657 P2d 726 (1983) ("The same rules that govern statutory construction also apply to the construction of municipal ordinances."). We begin with the text and context of PCC 14.24.030, and rely on dictionary definitions to provide the range of possible meanings of words in their common usage. *Osborn v. PSRB*, 325 Or 135, 146, 934 P2d 391 (1997). *Webster's Third New Int'l Dictionary* defines "right-of-way" as:

> "**1 :** a legal right of passage over another person's ground;
> * * * **2 :** the area or way over which a right-of-way exists; as

a : a path or thoroughfare which one may lawfully use (as in crossing the property of another) : one established by persons exercising the right to pass over the property of another **b** : the strip of land devoted to or over which is built a public road[.]" *Webster's Third New Int'l Dictionary*, 1956 (unabridged ed 1993).

The definition of "public" is:

"of, relating to, or affecting the people as an organized community : CIVIC, NATIONAL; * * * of or relating to the international community or to mankind in general : COMMON, UNIVERSAL[.]" *Id.* at 1836.

Thus, when those definitions are combined, the common understanding of the phrase "public right-of-way" in this context is "a path, thoroughfare, area or way that people as an organized community, the international community or humankind in general may lawfully use."

■     The context of PCC 14.24.030 supports that understanding of the phrase. The ordinance provides, "[i]t is unlawful for any person to drink alcoholic liquor upon any *street, sidewalk, or other public right of way.*" (Emphasis added.) "Street" and "sidewalk" are other types of paths or thoroughfares that the public may lawfully use. Such an interpretation also honors the principle of *ejusdem generis*, according to which an open-ended "catch-all" term at the end of a list of specific items is intended to encompass only like items. *See, e.g., Boyd v. Essin*, 170 Or App 509, 516-17, 12 P3d 1003 (2000), *rev den* 331 Or 674 (2001) ("the general will partake of the same characteristics as the specific examples").

■     Defendant does not point to any ambiguity in the term "public right-of-way," nor is one apparent to us. His contentions appear to be that the phrase should be limited to mean only streets and sidewalks or, alternatively, that the area in which he was arrested was not a public right-of-way. However, using the methodology employed in statutory interpretation, we will construe municipal ordinances in such a way as to give meaning to each word or phrase, taking care not to add language to, or omit language from, what is written in the ordinance. *Lane County v. R.A. Heintz Const. Co.*, 228 Or 152, 157, 364 P2d 627 (1961). In context, the

phrase "other public right-of-way" refers to areas that are used by the public in the same way that sidewalks and streets are used but that are not sidewalks or streets. We turn to the evidence presented at trial to determine whether it demonstrates that the area in which defendant was arrested is used by the public like a sidewalk, street or other public thoroughfare. "Where, as here, defendant moved for judgment of acquittal at the end of the state's case, we consider all the evidence and will not reverse the trial court if the record as a whole contains sufficient evidence to support a conviction." *State v. Gaynor*, 130 Or App 99, 101 n 1, 880 P2d 947 (1994), *rev den* 320 Or 508 (1995).

■ The evidence offered by the arresting officer was that he found defendant seated and drinking his beverage in the "D and E seating area." The area, according to the record, is a corridor in the central terminal through which the public travels from the ticket counter area to the security check points that are necessary to reach the departure and arrival gates, and seating is provided in the corridor for those who do not want to go through the metal detectors. The officer also testified that the area in which defendant was seated is not visible from the brew pub where defendant purchased his beverage. Defendant's wife's testimony confirmed that the area is a public corridor or thoroughfare; "That's what I saw—is a kind of like big, wide open hallway to me." Because the area in which defendant was seated qualifies as an area through which the public travels from one point to another in the terminal, we hold that it constitutes a "public right-of-way."[5] Thus, the evidence is sufficient to support the trial court's finding that defendant violated the ordinance.

Affirmed.

**ARMSTRONG, J.,** dissenting.

I dissent from the majority's conclusion that PCC 14.24.030 proscribes defendant's conduct. The code provision prohibits people from drinking "alcoholic liquor upon any

___

[5] The dissent would confine the words "or other public right of way" in the ordinance to rights-of-way that cross nonpublic property or that constitute streets or sidewalks and thus exclude the application of the phrase to public ways in airport terminals. That assertion is difficult to reconcile with the understanding that hallways in airport terminals serve the same function as streets and sidewalks.

street, sidewalk, or other public right of way." PCC 14.24.030(A). According to the majority's interpretation of "right of way" in the provision, the lobbies, hallways, escalators, and elevators used by the public in public buildings are rights-of-way equivalent to streets and sidewalks. I cannot believe that the City of Portland intended its ordinance to treat as rights-of-way the public space in public buildings. Consequently, I would reverse defendant's conviction for drinking alcohol in a seating area in the terminal building at the Portland airport.

The majority is correct that, in interpreting ordinances, we abide by the same rules that govern the construction of statutes. *Harris v. Sanders*, 142 Or App 126, 130, 919 P2d 512, *rev den* 324 Or 322 (1996). Our starting point is thus the text of the ordinance, and we give the words of the ordinance "their plain, natural, and ordinary meaning." *Id*. (citations omitted). We have also observed that dictionaries may be useful starting points for determining the meaning of words. *State v. Holloway*, 138 Or App 260, 265, 908 P2d 324 (1995). Where the majority errs is in interpreting the dictionary definition that it sets out. It quotes the following definition of "right-of-way" from *Webster's Third New Int'l Dictionary* and then erroneously interprets the second alternative definition, which explicitly relies on the first alternative definition, in isolation from the first, thus distorting the meaning of the second:

> "**1** : a legal right of passage over another person's ground * * *; **2** : the area or way over which a right-of-way exists: as **a** : path or thoroughfare which one may lawfully use (as in crossing the property of another) : one established by persons exercising the right to pass over the property of another **b** : the strip of land devoted to or over which is built a public road[.]"

*Webster's Third New Int'l Dictionary*, 1956 (unabridged ed 1993). In context with the first definition, the second definition becomes "an area or way over which exists the right to pass over another person's ground." A "public right of way" would then be "an area or way within another person's ground over which the public in general has the right to pass."

Instead of acknowledging the limited scope of the term "right of way," the majority concentrates on the word "area" in the second definition and downplays the term's central focus as a "right of passage." It further broadens the definition when it concludes that a "public right of way" is an "area" that the public in general "may lawfully use." 174 Or App at 99. By substituting the very broad verb "use" for "right of passage" and by focusing on the word "area" to the exclusion of the words modifying it, the majority manages to sweep airport terminal areas into its newly created concept of a public right-of-way. The trouble is that the majority's new concept of "right of way" bears little relation to the ordinary meaning of the term. Moreover, in a large public area, such as an airport terminal, the idea that a right-of-way is supposed to be a circumscribed passageway through another person's property is completely lost; because both the airport terminal itself and most passageways inside it are public, the reference to "another person's ground" loses meaning. The majority oversteps its power in its eagerness to affirm defendant's conviction in light of the fact that he engaged in the commonly proscribed conduct of drinking in public.

The narrow focus of the definition of "right of way" in *Webster's Third New Int'l Dictionary* is borne out by the definitions in *Black's Law Dictionary* and in the case law from various jurisdictions. Nowhere in my research have I encountered a definition of "right of way" broad enough to encompass airport terminal areas. The seventh edition of *Black's Law Dictionary* defines "right-of-way" as "[a] person's legal right, established by usage or by contract, to pass through grounds or property owned by another." *Black's Law Dictionary*, 1326 (7th ed 1999). The fourth edition describes the term in slightly more detail:

> "The right of passage or of way is a servitude imposed by law or by convention, and by virtue of which one has a right to pass on foot, or horseback, or in a vehicle, to drive beasts of burden or carts, through the estate of another."

*Black's Law Dictionary*, 1489 (4th ed 1968). Both definitions affirm that a "right of way" is a right of passage and suggest

that that right of passage exists over a narrowly circumscribed geographical area within land owned by another.

Examining the dictionary definition of "way" further reinforces that conception. *Webster's Third New Int'l Dictionary* defines "way" as "a thoroughfare used or designed for traveling or transportation from place to place," *Webster's Third New Int'l Dictionary* at 2587, and *Black's Law Dictionary*, 1587 (7th ed 1999), defines "way" as "[a] passage or path." To broaden "right of way," as the majority does, to include any area that the public in general may lawfully use completely obliterates the meaning of "way" and deletes that word from the term "right of way."

All of the dictionary definitions imply that a "right of way" is something that is outside, unlike the enclosed terminal area at issue here. The *Webster's* definition quoted above refers to "passage over another person's ground," *Webster's Third New Int'l Dictionary* at 1956; the word "ground" in that definition suggests unenclosed land rather than an enclosed structure. Similarly, the seventh edition of *Black's Law Dictionary* refers to "grounds or property owned by another." *Black's Law Dictionary*, 1326 (7th ed 1999). Both "grounds" and "property" suggest outdoor, exposed land, rather than enclosed spaces *inside* buildings. Even the definitions of "way" cited above refer to "paths" and "thoroughfares," both of which are difficult to envision anywhere but outside.[1] The majority's extension of the concept of "right of way" to passageways and other areas *inside* buildings is quite radical. If the majority's interpretation is taken to its logical conclusion, then escalators, lobbies, and hallways in public buildings all are public rights-of-way. PCC 14.24.030 would then be given an extensive application that quite exceeded the city council's intentions as evidenced by the plain meaning of the term "right of way."

The majority concedes that, given that the ordinance at issue forbids drinking alcohol upon "any street, sidewalk, or *other* public right of way," PCC 14.24.030(A) (emphasis

---

[1] Indeed, the implicit limitation to *outdoor* passageways in the above definitions makes sense. It is difficult to imagine implying in law or buying or condemning the right to walk through another person's building at one's leisure.

added), the doctrine of *ejusdem generis* is applicable, and, as a consequence, public rights-of-way that are subject to the ordinance must have the same characteristics as streets and sidewalks.[2] 174 Or App at 99. However, it proceeds to misapply the principle, as demonstrated by a review of the Supreme Court's decision in *Groshong v. Mutual of Enumclaw Ins. Co.*, 329 Or 303, 985 P2d 1284 (1999).

In *Groshong*, the Supreme Court applied the doctrine to a list of items in an insurance policy. The policy covered "wrongful entry or eviction, or other invasion of the right to private occupancy." *Groshong*, 329 Or at 306 (internal quotation marks omitted). The question before the court was whether housing discrimination directed at a prospective renter was an other invasion of the right to private occupancy. *Id.* at 312-13. In holding that it was not, the court noted that both wrongful entry and eviction required the existence of an established possessory interest and that the victim of the housing discrimination at issue had no such interest. Because of that difference, the court held that suffering housing discrimination was not an injury of like kind and character as wrongful eviction and wrongful entry and that it was therefore not covered by the policy. *Id.* at 313-14. Similarly, streets and sidewalks have the shared characteristics of being outdoor thoroughfares over which people travel in various modes. Terminal areas in airports, in contrast, are not thoroughfares, and they are not outdoors. People do travel within them, but that is true of the interior space of most public buildings. Therefore, under the Supreme Court's holding in *Groshong*, as well as under the majority's own analysis of the requirements of the *ejusdem generis* doctrine, an airport terminal area is not a public right-of-way, and defendant's conduct was not proscribed by the ordinance.

Because I conclude that a public terminal area in a public airport is not a public right-of-way, I would reverse defendant's conviction for violating PCC 14.24.030. Accordingly, I respectfully dissent.

---

[2] As defined by the majority, *ejusdem generis* is the principle that "an open-ended 'catch-all' term at the end of a list of specific items is intended to encompass only like items," 174 Or App at 99 (citations omitted).