Argued and submitted April 9, affirmed September 5, 2001

# STATE OF OREGON,
## *Respondent,*

*v.*

# PAUL McCAULEY JOHNSTON,
## *Appellant.*

## 005496; A111471

31 P3d 1101

Anne Morrison argued the cause for appellant. With her on the brief was Ricker and Roberson.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy

Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

.

## BREWER, J.

Defendant was convicted of criminal nonsupport, ORS 163.555, and felony failure to appear, ORS 162.205. The trial court sentenced him to probation and ordered that he serve 60 days in the county jail as a condition of probation, with credit for time served. The trial court also ordered, as a special condition of probation, that defendant "[s]hall pay per diem of $39.75 for each day served" in the county jail. Defendant appeals, arguing that the trial court lacked authority to order him to pay the described amount as a special condition of probation. According to defendant, costs for confinement of a person in a local correctional facility may be assessed and recovered only as provided in ORS 169.151. The state responds that the trial court's order was authorized under ORS 137.540(1), relating to general conditions of probation; under ORS 137.540(2), relating to special conditions of probation; or both. We affirm.

The legislature generally has plenary authority to enact laws governing the sentences for criminal offenses, subject to applicable constitutional restrictions. *State v. McDonnell*, 329 Or 375, 382, 987 P2d 486 (1999). Probation is a sentence. *State v. Zimmerman*, 166 Or App 635, 999 P2d 547 (2000); *see also* ORS 137.520 to ORS 137.630; OAR 213-005-0006. Conditions of probation must be consistent with the sentencing court's legislatively conferred authority. *See State v. Kappelman*, 162 Or App 170, 986 P2d 603 (1999) (conditions of probation imposed by the trial court were not authorized under applicable statutes).

Consistent with those principles, we need not determine whether ORS 169.151 precluded the court's order in this case if, in the first instance, the trial court lacked authority under ORS 137.540 or other applicable statute to order defendant, as a condition of probation, to pay per diem costs of his time served in the county jail. We therefore begin with that question. ORS 137.540 provides, in part:

"(1) The court may sentence the defendant to probation, which shall be subject to the following general conditions unless specifically deleted by the court. The probationer shall:

"(a) Pay supervision fees, fines, restitution or *other fees ordered by the court*.

"* * * * *

"(2) In addition to the general conditions, the court may impose *any special conditions of probation that are reasonably related to the crime of conviction or the needs of the defendant for the protection of the public or reformation of the offender, or both*, including, but not limited to, [specified conditions not relevant here.]" (Emphasis added.)

Again, the state argues that, notwithstanding ORS 169.151, the sentencing court was authorized to impose per diem jail costs as a "fee" authorized under ORS 137.540(1)(a), providing for general conditions of probation. Alternatively, the state argues that the court was authorized to impose those costs as a special condition of probation under ORS 137.540(2), because the costs were related to defendant's reformation—including remedying his past failures to take personal responsibility for his conduct and his obligations—and, therefore, the protection of the public.[1]

■■ We first consider whether jail costs may be imposed as a general condition of probation, that is, as an "other fee[ ] imposed by the court" under ORS 137.540(1)(a). The criminal code does not define the term "fee." *Webster's Third New Int'l Dictionary*, 833 (unabridged ed 1993), defines "fee" as

"a charge fixed by law or by an institution (as a university) for certain privileges or services ‹a license [fee]› * * * a charge fixed by law for the services of a public officer * * * compensation often in the form of a fixed charge for professional service * * *."[2]

The ordinary legal meaning of "fee" is a "charge for labor or services, especially professional services." *Black's Law Dictionary*, 629 (7th ed 1999). In turn, "service" means, as pertinent here, not only "professional or other useful ministration" but also "the duties, work or business performed or discharged by a government official." *Webster's Third New*

---

[1] The parties do not raise any issue regarding the particular amount of the payment imposed by the court.

[2] "Fixed" means "not subject to change or fluctuation * * * ‹ a [fixed] rate * * * ›." *Webster's Third New Int'l Dictionary* at 861.

*Int'l Dictionary* at 2075. A fee therefore ordinarily is a charge, often a fixed charged, for a professional or other useful service, including a service or function provided by a governmental body.[3] Under that definition, a fee plausibly can include a charge imposed to recover the costs of maintaining an offender in a local correctional facility.

We do not perceive any meaningful distinction in this context between the term "fee" and related terms such as "cost" or "expense." Each of the latter terms also is defined in part as an amount paid or charged for a service rendered. *See Webster's Third New Int'l Dictionary* at 515, 800. Consistently with the similarity between the meaning of the term "fee" and the meanings of the terms "costs" and "expenses," several provisions of the criminal code authorize imposition of a "fee" to offset or recover "costs." *See, e.g.,* ORS 137.630 (setting out duties of probation officers and providing that probation officers shall not be required to collect from supervised persons "any fees to offset the costs of supervising the probation"); ORS 144.102(2)(h) (person attending victim impact treatment session may be required to pay a "reasonable fee" to the victim impact program "to offset the cost of the person's participation"); ORS 144.103 ("costs incurred" as a result of imposition of enhanced term of post-prison supervision for sex offenders shall be paid by an increase in supervision "fees" imposed under ORS 423.570); ORS 423.570 (providing that persons sentenced to probation or placed on parole, post-prison supervision or other form of community supervision shall be required to pay a monthly "fee" to offset "costs" of supervision). Thus, a "fee" logically can be imposed to cover jail "costs" or "expenses."

---

[3] *See also, e.g.,* ORS 135.055 (providing that a person determined to be eligible under ORS 135.050 for appointed counsel is entitled to "expenses" relating to preparation of the case, including "costs" of obtaining witnesses and "fees" for expert witnesses and interpreters and providing that appointed counsel shall submit to the court a statement of "fees and expenses" of investigating and preparing the case); ORS 144.317 (Board of Parole and Post-Prison Supervision may appoint attorney to represent indigent person on parole or post-prison supervision at revocation hearing and to order as a condition of parole or post-prison supervision that the person pay a portion of the attorney fees resulting from such representation); ORS 166.575(6) (in the context of cellular telephone offenses, defining "end user" in part as "a person who pays a fee to subscribe to cellular telephone service"); ORS 167.002(2) (defining "prostitute"as a "person who engages in sexual conduct or sexual contact for a fee").

Also as pertinent to the textual level of analysis, where ORS 137.540(1)(a) refers to "supervision fees, fines, restitution or *other fees* ordered by the court" (emphasis added), we infer that the legislature intended "other fees" to be of the same general type as the specifically enumerated fees. *See State v. Moore*, 174 Or App 94, 25 P3d 398 (2001) (under the principle of *ejusdem generis*, the general will partake of the same characteristics as the specific examples; citing *Boyd v. Essin*, 170 Or App 509, 516-17, 12 P3d 1003 (2000), *rev den* 331 Or 674 (2001)). Fees imposed to recover the costs of maintaining an offender in the county jail are directly analogous to supervision fees imposed on an offender placed on probation but not confined in the county jail, *see* ORS 423.570. Thus, those fees properly are included in the phrase "other fees."

For all of the above reasons, we conclude that the phrase "other fees" in ORS 137.540(1)(a) includes amounts imposed by sentencing courts to recover costs or expenses incurred by a county in maintaining an offender in a local correctional facility.

The context of ORS 137.540(1)(a) supports that interpretation. ORS 137.290 requires trial courts to impose on a convicted defendant a "unitary assessment"; the assessment must be imposed "in addition to *any other monetary obligation imposed.*" (Emphasis added.) Under ORS 137.293, "[a]ll fines, costs, assessments, restitution, compensatory fines and *other monetary obligations* imposed on a convicted person" constitute a single monetary obligation. (Emphasis added.) ORS 137.295 sets out the required distribution of money paid by convicted defendants against "monetary obligations imposed as a result of that conviction" and sets out four "categories of monetary obligations." Categories one and two consist of, respectively, compensatory fines and restitution; category three consists of the unitary assessment, costs for appointed counsel and other costs incurred by the state in prosecuting the defendant; category four consists of monetary obligations imposed upon the defendant that do not fall in the other categories; they "include, *but are not limited to,*" monetary obligations required to be paid to specified entities. (Emphasis added.) Also as pertinent here, ORS 137.452 sets

out procedures for obtaining a satisfaction of a money judgment when "a person is convicted of an offense and sentenced to pay *any monetary obligation*[.]" (Emphasis added.) Under ORS 161.675, a sentencing court that imposes a "sum of money *for any purpose*," either as a part of a sentence or as a condition of probation may order payment of the sum in installments or, if the court finds that the defendant has assets to pay the amounts ordered, may order payment during the period of imprisonment. (Emphasis added.) Each of those statutes—particularly the emphasized phrases—refers in broad, general, inclusive terms to monetary obligations that a sentencing court may impose on a convicted defendant. Thus, each of those statutes suggests that, consistently with the plain meaning of the phrase "other fees" in ORS 137.540(1), the trial court was authorized to impose the "fee" or costs imposed in this case.

We separately consider another related statute. ORS 137.520 provides that, when a court sentences an offender to probation and orders as a condition of probation that the offender be confined in the county jail for a period of time, the court also may authorize, limit, or prohibit the release of the offender on work release.[4] ORS 137.520(2). An offender placed on work release is confined in the jail during the hours in which the offender is not employed. ORS 137.520(4). When an offender is employed in a work-release program, the offender's

"net earnings shall be paid to the sheriff, who shall deduct therefrom and pay *such sums* as *may be ordered by the court for the defendant's board, restitution, fine, support of dependents and necessary personal expense.* Any balance remaining shall be retained by the sheriff until the defendant's discharge from custody, whereupon the balance shall be paid to the defendant." ORS 137.520(4) (emphasis added).

In other words, ORS 137.520 expressly authorizes a court to order one subcategory of offender—offenders sentenced to probation, ordered to serve time in the county in jail as a condition of probation, and placed on work release—to pay at

---

[4] The record indicates that defendant was not placed on work release. Neither defendant nor the state makes any argument based on ORS 137.520.

least one category of cost incurred by a county jail on behalf of the offender—namely, "board."[5]

■      Under established principles of statutory construction, the inclusion of specific matters in a statute may imply a legislative intent to exclude related matters not mentioned. *Roseburg Forest Products v. Wilson*, 110 Or App 72, 821 P2d 426 (1991); *see also Fisher Broadcasting, Inc. v. Dept. of Rev.*, 321 Or 341, 353, 898 P2d 1333 (1995) (applying maxim to text of statute at first level of interpretive analysis). ORS 137.520 thus raises the question whether, having expressly provided that a trial court may order deductions for the costs of board from the earnings of offenders sentenced to probation and placed on work release, the legislature intended to preclude sentencing courts from ordering payment by other probationers—such as offenders confined in the county jail as a condition of probation but not placed on work release—for the costs of board or any other jail costs.

We conclude that ORS 137.520 was not so intended. Rather, we understand ORS 137.520 to provide procedures for, and limitations on, payments made out of a particular *source* of funds, namely, the "earnings" of an offender on work release. In effect, ORS 137.520 is equivalent to a garnishment statute as applied to those earnings. *See* ORS 29.125 *et seq.* (providing for writs of garnishment of property of debtor); ORS 29.401 *et seq.* (providing for writs of continuing garnishment of earnings of debtor). ORS 137.520 says nothing, however, about a sentencing court's authority to impose "other fees," including costs of maintaining an offender in the county jail, to be paid out of an offender's other sources of funds, if any.

■      Based on the text and context of ORS 137.540(1)(a), we conclude that the trial court was authorized to require, as a general condition of probation, that defendant pay per diem jail costs. Having so concluded, we need not consider whether the trial court was authorized to impose those costs as a special condition of probation under ORS 137.540(2). For the same reason, although the trial court purported to impose

---

[5] The term "board" most typically means "food in the form of daily meals." *Webster's Third New Int'l Dictionary* at 243. It also can include lodging. *Black's Law Dictionary*, 166 (7th ed 1999).

the costs as a special condition of probation, any error in doing so was harmless.[6]

■     The question nevertheless remains whether, as defendant argues, the enactment of ORS 169.151 in 1997 in effect divested the court of its authority under ORS 137.540 to impose payment of jail costs as a condition of probation. ORS 169.151 provides:

"(1)   A city or, notwithstanding ORS 169.150(1) [relating to payment of 'charges and expenses' for maintaining persons in local correctional facilities out of treasury of county], a county may seek reimbursement from a person who is or was committed to the local correctional facility of the county or city upon conviction of a crime for any *expenses* incurred by the county or city in safekeeping and maintaining the person. The county or city may seek reimbursement:

"(a)   At a rate of $60 per day or its actual daily cost of safekeeping and maintaining the person, whichever is less, multiplied by the total number of days the person was confined to the local correctional facility, including, but not limited to, any period of pretrial detention; and

"(b)   For any other charges or expenses that the county or city is entitled to recover under ORS 169.150.

"(2)   The county or city may seek reimbursement for expenses as provided in subsection (1) of this section by filing a civil action no later than one year after the person from whom reimbursement is sought is released from the local correctional facility.

---

[6] ORS 137.540(2) provides, in part, that a court may impose "any special conditions of probation that are reasonably related to the crime of conviction or the needs of the defendant for the protection of the public or reformation of the offender, or both." Trial courts have broad discretion in imposing special conditions of probation. *State v. Qualey*, 138 Or App 74, 906 P2d 835 (1995). A trial court must establish a factual record to support its imposition of a special condition of probation under ORS 137.540(2). *State v. Mack*, 156 Or App 423, 428, 967 P2d 516 (1998). The record may be established by the evidence at trial; it also may be established at the sentencing. *Id.* In this case, in imposing jail costs as a special condition of probation, the trial court found that defendant had a history of failing to meet his legal obligations, including failure to meet prior court dates and probation requirements, and a history of failing to meet financial obligations, including child support. The record also indicates that defendant's family, rather than defendant, had paid $38,000 owed by defendant for past-due child support. We agree that those findings would support imposition of the ( s as a special condition of probation.

"(3) When a person is found liable for expenses described in subsection (1) of this section and an amount is determined, the court shall, before entering a judgment against the person, allow the person to present evidence on the issue of the person's ability to pay. When a person presents such evidence, the court shall determine the person's ability to pay taking into consideration:

"(a) The financial resources of the person and the burden that payment will impose on the person in providing basic economic necessities to the person or the person's dependent family; and

"(b) Any other monetary obligations imposed upon the person by the court as a result of the conviction for which the person was committed to the local correctional facility.

"(4) The court, and not a jury, shall determine the defendant's ability to pay under subsection (3) of this section.

"(5) Upon the conclusion of a proceeding under subsection (3) of this section, the court may enter a judgment:

"(a) Of dismissal if the court finds that the person lacks the ability to pay;

"(b) For less than the full amount determined if the court finds that the person has the ability to pay a portion of the amount; or

"(c) For the full amount determined, plus costs and disbursements, if the court determines the person has the ability to pay.

"(6) Any reimbursements collected under this section must be credited to the general fund of the county or city to be available for general fund purposes."

By its terms, ORS 169.151 does not expressly state that it constitutes the exclusive method for assessment and recovery of jail costs from an offender. Nor does it expressly preclude assessment of them through some other mechanism.[7] Equally significant, by its terms, ORS 169.151

---

[7] The legislature knows how to provide that a statutory mechanism is an exclusive one, including statutory mechanisms provided in the criminal code. *See, e.g.,* ORS 138.540 (petition for post-conviction relief is the "exclusive means" for challenging lawfulness of judgment of conviction or underlying proceedings).

addresses only the authority of *a city or county* to recover jail costs; it says nothing about the authority of *a sentencing court* to order payment of such costs. The text of ORS 169.151 therefore suggests that it does not preclude a sentencing court from exercising the authority conferred on it by ORS 137.540(1).

We also consider the context of ORS 169.151. We have not identified any other provision of ORS chapter 169 (pertaining to local correctional facilities) that sheds light on whether ORS 169.151 was intended to be an exclusive method of recovering jail costs from an offender or to preclude a sentencing court from imposing such costs. As discussed above, provisions of other chapters, including ORS chapter 137 and ORS chapter 161, indicate that a sentencing court has authority to impose jail costs as a general condition of probation.

Because the text and context of ORS 169.151 do not definitively answer the question whether the 1997 Legislature intended that statute to provide the exclusive mechanism for recovery of jail costs from offenders, we also consider its legislative history. ORS 169.151 was enacted as House Bill (HB) 2541. Testimony and exhibits presented to the legislature in regard to HB 2541 indicate that, at that time, the legislature understood that there was no existing mechanism for recovery of jail costs by a county. *See, e.g.*, Staff Measure Summary, HB 2541A, House Committee on Judiciary, Subcommittee on Criminal Law, April 18, 1997 (stating that the proposed legislation "[a]uthorizes a county to charge prisoners for certain expenses, including the costs of keeping them" and noting pre-existing authority for recovering certain other costs, including costs of board from jail inmates on work release, costs of health care services and medication, and supervision fees); Minutes, Senate Crime and Corrections Committee, May 21, 1997, Exhibit A (written submission of Paul Snider, legal counsel for Association of Oregon Counties, stating that Oregon law, including ORS 137.520, ORS 169.150, and ORS 423.570, currently allowed recovery of certain expenses from county jail inmates and currently allowed for reimbursement to the state of the housing costs of state prisoners, but did not authorize recovery of expenses incurred for room and board for inmates of county jails); Tape

recording, Senate Crime and Corrections Committee, May 21, 1997 (testimony of Representative Lane Shetterly and Polk County Administrative Officer John K. Anderson, including testimony regarding absence of pre-existing authority for recovering jail costs). The legislative history also indicates that the legislature intended the newly enacted mechanism to be the exclusive mechanism by which *counties,* themselves, could seek to recover those costs. *See* Fiscal Analysis, HB 2541, April 23, 1997 (stating that the bill "authorizes *counties* to seek reimbursement from individuals for the * * * maintenance of the person while they were incarcerated" and stating that *"the county must file civil action* in the court to seek the reimbursement" (emphasis added)).

The cited legislative history does not contradict our conclusion that ORS 137.540(1)(a) authorizes sentencing courts to impose jail costs as general condition of probation. First, under a settled principle of statutory construction, the fact that the 1997 Legislature believed that no pre-existing statute authorized recovery of jail costs (other than recovery of board from offenders on work release and other specified costs) is of no significance to whether such statutory authority actually existed. As the Supreme Court stated in a different context in *DeFazio v. WPPSS*, 296 Or 550, 561, 679 P2d 1316 (1984),

> "the legislative history shows that some witnesses doubted that such authority existed, and legislators may have shared those doubts. But that cannot be used to show what the prior state of the law actually was. The views legislators have of existing law may shed light on a new enactment, but it is of no weight in interpreting a law enacted by their predecessors."

Second, the legislative history cited above—like the text of the statute—most properly is understood as relating only to the authority of the counties themselves to seek and recover jail costs and as simply not addressing the authority of a sentencing court to order payment of those costs as a condition of probation. *Cf. Gaynor v. Board of Parole*, 165 Or App 609, 996 P2d 1020 (2000) (distinguishing between authority of sentencing court under ORS chapter 137 to impose sentence and authority of Board of Parole and Post-Prison Supervision under ORS chapter 144 to execute sentence).

■ Finally, we consider whether ORS 169.151 was intended to repeal the pre-existing statutory authority of sentencing courts to impose payment of jail costs as an "other fee[ ]" under ORS 137.540(1)(a). *See State v. Thompson-Seed*, 162 Or App 483, 491, 986 P2d 732 (1999) (where text, context, and legislative history of statute failed to disclose legislature's intention in regard to pre-existing statutes addressing same subject matter, court considered whether legislature intended for statute impliedly to repeal pre-existing statutes). An express statement of legislative intent to repeal prior statutes is the best evidence of such intent. *Id.* at 491. The intention to repeal also may be indicated, however, by the existence of an unworkable conflict between the new and old statutes. *Id.; see also State v. Shumway*, 291 Or 153, 160, 630 P2d 796 (1981) (when the legislature enacts a subsequent statute that is repugnant to or in conflict with a prior statute but contains no language expressly repealing the prior statute, the prior statute is impliedly repealed). Repeal by implication is not favored and must be established by "plain, unavoidable, and irreconcilable repugnancy." *Id.* at 162; *see also State v. Langdon*, 330 Or 72, 999 P2d 1127 (2000) (restating those principles). The existence of such conflict must be determined in light of the statutory mandate that, where there are several provisions relating to a subject, such construction is to be adopted as will give effect to all. ORS 174.010; *Thompson-Seed*, 162 Or App at 491.

Here, the question is whether ORS 169.151 impliedly repealed, by reason of a "plain, unavoidable, and irreconcilable repugnancy," the application of the phrase "other fees" in ORS 137.540(1)(a) to jail costs. We conclude it did not. Again, ORS 137.540(1)(a) authorizes *sentencing courts* to order offenders to pay various monetary obligations, including "other fees," as a general condition of probation. ORS 169.151 authorizes *counties* to seek reimbursement of per diem jail costs through a civil proceeding. We perceive no conflict between those alternative grants of authority relating to, and mechanisms for recovery of, those costs.[8]

Affirmed.

---

[8] We do not mean to suggest that the sentencing court is authorized, under ORS 137.540(1)(a), to order an offender's payments of per diem jail costs to be credited other than as provided in ORS 169.151(6).